**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 96-4219

TAI ANH PHAN,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-329-A)

Argued: April 10, 1997

Decided: July 29, 1997

Before RUSSELL and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Russell wrote the opinion, in
which Judge Luttig and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** John Kenneth Zwerling, ZWERLING & KEMLER, P.C.,
Alexandria, Virginia, for Appellant. James L. Trump, Assistant
United States Attorney, Andrew Gerald McBride, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Alexandria, Virginia, for Appellee. **ON BRIEF:** Lisa B. Kemler,
ZWERLING & KEMLER, P.C., Alexandria, Virginia, for Appellant.

Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

## OPINION

RUSSELL, Circuit Judge:

Tai Anh Phan acted as a confidential informant for the FBI starting in May 1995. As part of his cooperation agreement, Phan promised not to engage in any criminal activity. Within a few weeks of entering into the agreement, however, Phan decided to rob a gun dealer with the help of a criminal associate, Anthony Wright. Demonstrating that there is really no honor among thieves, Wright also became an FBI informant and told agents about the robbery plan, leading to Phan's arrest.

Phan's downfall began in March 1995 when he called Wright in Atlanta and discussed plans to travel from Virginia to Atlanta in order to engage in credit card fraud. Wright contacted an agent of the United States Secret Service and arranged to record his phone conversations with Phan. The Secret Service conducted a brief investigation, paid Wright for his help, but ended its inquiry in the middle of April.

Phan asked Wright to come to Virginia. Wright agreed. On April 25, 1995, Wright telephoned FBI headquarters in Washington, D.C. and asked to speak to someone about Phan. Wright's call was directed to Agent Charles Knowles, who was one of Phan's contacts at the FBI. Wright talked to Agent Knowles and took down his name and telephone number.

In May 1995, Wright moved from Atlanta to Virginia and initially stayed with Phan at his home in Falls Church. Phan asked Wright about any possible criminal enterprise in which they could participate. Wright said that he knew of a gun dealer, Richard Perkins, who kept a number of guns in his house. Perkins was the Mid-Atlantic sales representative for Glock, Inc., a large manufacturer of semi-automatic handguns. Phan expressed interest in robbing Perkins.

2

On May 30, 1995, Wright again contacted Agent Knowles and told him that Phan was planning to rob a gun dealer. Agent Knowles instructed Wright to call him if he got any further information. The FBI opened an informant file for Wright on June 7, 1995, and Wright began to receive money from the agency in mid-June.

Meanwhile, Phan engaged in affirmative steps toward robbing Perkins, including: 1) telephoning Perkins and pretending to be a United Parcel Service driver in order to get the exact address of Perkins' house; 2) soliciting three other criminal associates, Tuan Nguyen, Khai Bui, and Minh Le, to participate in the robbery; 3) establishing the plan for the robbery; and, 4) instructing Wright to map out the area surrounding Perkins' house. Wright recorded a number of his phone conversations with Phan during which they discussed the robbery and the eventual sale of the stolen guns.

As part of Phan's cooperation agreement, Agent Knowles and another FBI agent met with Phan on June 15, 1995. They asked Phan if he had any information on illegal guns, robberies, home invasions, burglaries, or gang activity. Phan told the agents this activity was "not his style," and that he did not associate with anyone who committed those types of crimes.

Phan informed the members of the conspiracy that they would be using guns as part of the robbery. In a taped conversation, Phan assured Wright that the other conspirators would not hesitate to subdue Perkins by any means necessary. On June 24, 1995, Phan met with Tuan Nguyen and gave him a bag containing two handguns. Phan asked Nguyen to keep the handguns.

Finally, on June 30, 1995, Phan called the conspirators and told them the robbery would take place that day. Phan instructed Nguyen to bring the handguns and give them to Khai Bui. With the FBI following every move, Nguyen, Bui, Le and Wright drove to Perkins' house. Phan did not go along. The FBI intervened just as the robbery was about to begin, arrested all of the participants, and seized two loaded firearms.

A grand jury indicted Phan with conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and a superseding

indictment added a charge for using a firearm during and in relation to a crime of violence in violation of 18 U.S.C.§ 924(c)(1). Nguyen, Bui, and Le eventually pleaded guilty to Hobbs Act violations. Everyone involved in the crime testified against Phan at his trial. Phan filed a number of pre-trial motions, including a motion to dismiss the indictments based on outrageous government conduct. The district court denied Phan's motion without prejudice to his renewing the motion after trial.

At trial, Phan argued that he had acted under public authority, or, alternatively, the government's actions amounted to entrapment. After the close of evidence, the district court refused to instruct the jury on entrapment because of the lack of evidence tending to establish inducement by the government and the overwhelming evidence of predisposition to the crime on the part of Phan. The jury returned a verdict of guilty on both counts of the indictment. The district court again denied Phan's motion to dismiss the indictment based on outrageous government conduct. Phan was sentenced to 63 months on Count One and 60 months on Count Two to be served consecutively.

Phan appeals his convictions based on the sufficiency of the evidence establishing the § 924(c)(1) violation and the district court's refusal to give an entrapment instruction.

I.

The indictment in this case charged Phan with using the handguns in violation of § 924(c)(1). According to the Supreme Court in Bailey v. United States,[1] the government must demonstrate the handguns were "actively employed" in order to prove they were used in the manner contemplated by the statute. Phan discussed the need to carry firearms during the robbery with his criminal associates and provided Nguyen with two loaded handguns. On the day of the intended robbery, Nguyen transferred the handguns to Bui, who placed them under the seat of the car in which the conspirators traveled to Perkins' home. The question on appeal is whether these activities constituted the active employment of firearms during and in relation to the predi-

_____

[1] 116 S. Ct. 501 (1995).

4

cate offense of conspiracy to commit robbery.[2] We apply the familiar standard that a conviction is supported by sufficient evidence if, when viewing the evidence in the light most favorable to the government, we are able to conclude that a rational jury could have found each of the essential elements of the offense beyond a reasonable doubt.[3]

Bailey addressed the meaning of "use" within the context of two cases in which drug traffickers were found with drugs and firearms in their possession. Mere possession of a firearm, the Supreme Court held, is insufficient to establish use. Instead, the offender must have actively employed the firearm.[4] The Court offered a non-exclusive list of what constitutes active employment, including "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm."[5]

Phan argues that he did not actively employ the handguns because the FBI arrested the conspirators before the robbery took place. At best, Phan states, the evidence demonstrates that he intended to use the handguns during the robbery. According to Bailey, § 924(c)(1) "liability attaches only to cases of actual use, not intended use, as when an offender places a firearm with the intent to use it later."[6]

Phan's argument that he cannot be held liable for his mere intent to use a firearm might be persuasive if robbery were the predicate offense. A Hobbs Act conspiracy to commit robbery, however, is a separate crime of violence providing its own predicate for § 924(c)(1)

---

**2** Under the Pinkerton doctrine, Pinkerton v. United States, 328 U.S. 640 (1946), Phan is liable for the overt acts of every other conspirator done in furtherance of the conspiracy. See United States v. Gironda, 758 F.2d 1201, 1211-15 (7th Cir. 1985) (applying Pinkerton doctrine to hold defendants liable for use of firearm under § 924(c)), disapproved in part on other grounds, United States v. Durrive , 902 F.2d 1221, 1226 (7th Cir. 1990).
**3** Jackson v. Virginia, 443 U.S. 307, 319 (1979).
**4** Bailey, 116 S. Ct. at 508.
**5** Id. See United States v. Hawthorne, 94 F.3d 118, 120 (4th Cir. 1996) ("One might imagine any number of ways that a firearm may be actively employed, and the Supreme Court has enumerated a few. . . .").
**6** 116 S. Ct. at 507.

5

liability.**7** The relevant question is whether Phan actively employed the handguns during and in relation to the conspiracy, not whether the handguns were actively employed during and in relation to the robbery.**8** And on this question, unfortunately, Bailey offers only imperfect guidance.

Bailey deals with the application of § 924(c)(1) when the predicate offense is a substantive crime. Conspiracy, however, is an inchoate crime. As stated by the Supreme Court, our legal system "identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed."**9** The post-Bailey application of § 924(c)(1) in cases where conspiracy to commit a violent crime is the predicate offense, and the underlying crime has been committed, is straightforward. For example, in United States v. Elder,**10** the defendant brandished a firearm during three of the truck hijackings that formed the basis for his Hobbs Act conspiracy conviction. The Second Circuit had no difficulty finding that the defendant "used" the firearm as that term is elucidated in Bailey.**11** When the agreed-upon crime is never committed, however, Bailey can only be applied in a more general sense.

If Phan had merely possessed the handguns at the time of the conspiracy, even if he intended to use them during the robbery, we would be forced to vacate his conviction under Bailey .**12** On the other hand,

_____

**7** **See United States v. Elder**, 88 F.3d 127, 128-29 (2nd Cir. 1996) (per curiam) (holding that Hobbs Act conspiracy to commit armed robbery is by definition a felony involving substantial risk that physical force may be used and therefore is a proper predicate for a§ 924(c)(1) conviction).
**8** **See United States v. Meggett**, 875 F.2d 24, 29 (2nd Cir. 1989) (holding that use of firearm need not occur in connection with ultimate object of conspiracy in order to support a § 924(c)(1) conviction), abrogated on other grounds, United States v. Rosario, 111 F.3d 293, 300 (2nd Cir. 1997) (recognizing Bailey standard).
**9** **United States v. Feola**, 420 U.S. 671, 694 (1975).
**10** 88 F.3d 127 (2nd Cir. 1996).
**11** **Id.** at 129.
**12** 116 S. Ct. at 508 ("[T]he inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)."). See United States v. James, 79

we do not have to find that Phan actively employed the handguns in one of the ways listed in <u>Bailey</u> in order to affirm his conviction. As noted by the Court, "use" takes on different meanings depending on context.**13** In the context of the inchoate crime of conspiracy to commit robbery, we find that the giving of firearms to a fellow conspirator constitutes active employment.

Of course, the second element of a § 924(c)(1) conviction must also be satisfied. It is not enough that Phan gave the handguns to Nguyen, who subsequently turned them over to Bui. The use of the firearm must take place during and in relation to the conspiracy.**14** In this case, however, the nexus between the handguns and the conspiracy to commit robbery could not be closer. The transfer of the handguns was done in preparation for their eventual use during the robbery. In other words, the active employment of the handguns was in itself an overt act in furtherance of the conspiracy.

Even in light of the Supreme Court's holding in <u>Bailey</u>, there is more than sufficient evidence to support the jury's finding that Phan used the handguns during and in relation to the conspiracy to commit robbery. Accordingly, we affirm Phan's conviction.

II.

A valid entrapment defense contains two elements: 1) government inducement and 2) a lack of predisposition to commit the crime on the defendant's part.**15** The district court must determine that the defendant has met his initial burden of producing more than a scintilla of evidence of entrapment before submitting the issue to the jury.**16** The

_____

F.3d 553, 554 (7th Cir. 1996) (vacating § 924(c)(1) conviction predicated on drug trafficking conspiracy because defendant merely possessed firearm).

**13** 116 S. Ct. at 508.
**14** <u>United States v. Richardson</u>, 86 F.3d 1537, 1549 (10th Cir.) (discussing relevant cases), <u>cert. denied</u>, 117 S. Ct. 588 (1996).
**15** <u>United States v. Singh</u>, 54 F.3d 1182, 1189 (4th Cir. 1995).

**16** <u>Id.</u>

7

district court's refusal to give an entrapment instruction is a matter of law reviewed de novo.[17]

Phan failed to offer more than a scintilla of evidence that the government entrapped him into committing a crime. We are doubtful that a reasonable jury could conclude that Wright was acting for or on behalf of any law enforcement agency when he suggested the gun dealer as a potential target for Phan.[18] Agent Knowles opened an informant file for Wright on June 7, 1995, and Wright began to receive payments from the FBI in mid-June. This process took place after Phan had begun to make preparations for the robbery and had discussed his plans with other conspirators.

Even if Wright were viewed as a government informant based on his history as an informant and his initial contact with Agent Knowles, there is no evidence of inducement as a matter of law. Inducement involves the elements of government overreaching and conduct designed to implant a criminal design in the mind of an innocent party.[19] Wright told Phan about the gun dealer in response to Phan's request for information concerning a crime they could commit. The idea that Phan was an innocent party, or needed any help formulating a criminal design, is completely unbelievable. Finally, no reasonable jury could find that Phan was not predisposed to commit the crime charged. His eager and ready response to Wright's suggestion, combined with the leadership role he assumed, belies any argument that Phan was an unwilling participant.[20] Phan's claim is meritless.

III.

For the foregoing reasons, Phan's conviction under § 924(c)(1) and the district court's refusal to submit the issue of entrapment to the jury are affirmed.

AFFIRMED

_____

**17 Id.**

**18 See United States v. Perl**, 584 F.2d 1316, 1321 (4th Cir. 1978) (defendant must produce evidence of government involvement in scheme to entrap).
**19 United States v. Daniel**, 3 F.3d 775, 778 (4th Cir. 1993).
**20 See Jacobson v. United States** , 503 U.S. 540, 550 (1992) (ready commission of criminal act demonstrates predisposition).