**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

AVRAM L. GOTTLIEB, aka David
Gottlieb,

Defendant-Appellant.

No. 96-3278

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 95-CR-40023-01)

Jill M. Wichlens, Assistant Federal Public Defender, Denver, Colorado (Michael
G. Katz, Federal Public Defender, Denver, Colorado, with her on the brief), for
Appellant.

Gregory G. Hough, Assistant United States Attorney, Topeka, Kansas (Jackie N.
Williams, United States Attorney, Topeka, Kansas, with him on the brief) for
Appellee.

Before **PORFILIO, BRORBY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

# I. BACKGROUND

Defendant Avram Gottlieb pleaded guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). Prior to Gottlieb's plea, the government filed an information seeking enhancement of his sentence pursuant to 18 U.S.C. § 3559(c), popularly known as the "Three Strikes" statute. Congress enacted the Three Strikes statute in 1994 as part of a comprehensive crime control bill. *See* Violent Crime Control & Law Enforcement Act of 1994, Pub. L. No. 103-322, § 70001, 108 Stat. 1796, 1982 (codified at 18 U.S.C. § 3559(c)). The statute requires the district court to sentence to life in prison any person who is convicted in federal court of a "serious violent felony" if that person has previously been convicted in state or federal court of two or more "serious violent felonies." 18 U.S.C. § 3559(c)(1). Robbery is generally considered a "serious violent felony" for purposes of the Three Strikes statute. *See id.* § 3559(c)(2)(F).

Gottlieb had two previous convictions for "serious violent felonies." By pleading guilty to robbery, his third "strike," Gottlieb became subject to the Three Strikes statute. One of the two prior convictions the government relied on in seeking the sentence enhancement was a 1987 federal conviction for conspiracy to obstruct and affect commerce by robbery, in violation of 18 U.S.C. § 1951. At the sentencing hearing, Gottlieb contended that this offense, although considered a "serious violent felony," should not be counted as a "strike" because it

constitutes a "nonqualifying felony" under § 3559(c)(3)(A) of the Three Strikes statute. The district court rejected Gottlieb's argument and applied the Three Strikes statute to sentence Gottlieb to life in prison.

On appeal, Gottlieb argues that (1) the district court erred in sentencing him under the Three Strikes statute because his 1987 offense constitutes a "nonqualifying felony" and (2) the district court erred in failing to make his restitution obligation joint and several with that of a codefendant. This court agrees that Gottlieb should not have been sentenced under the Three Strikes statute. We therefore vacate Gottlieb's sentence and remand to the district court for resentencing. We further remand to the district court for clarification of the restitution order.

## II. DISCUSSION

### A. Three Strikes Statute

Gottlieb contends his 1987 conviction[1] for conspiracy to commit robbery constitutes a "nonqualifying felony" under 18 U.S.C. § 3559(c)(3)(A), thereby making the Three Strikes statute inapplicable. Section 3559(c)(3)(A) provides:

> Robbery, an attempt, conspiracy, or solicitation to commit robbery . . . shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that--

---

[1]Gottlieb does not challenge the other conviction the government relied on in seeking the sentence enhancement.

(i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and

(ii) the offense did not result in death or serious bodily injury . . . to any person.

18 U.S.C. § 3559(c)(3)(A). The government concedes that the 1987 offense did not result in death or serious bodily injury and that Gottlieb therefore satisfied the second prong of § 3559(c)(3)(A). The government and Gottlieb disagree, however, whether Gottlieb has met his burden of satisfying the first prong of that section, by showing the 1987 offense did not involve the "use" or "threat of use" of a firearm.[2]

## 1. Background of 1987 Offense

At the sentencing hearing, the district court began its inquiry into whether the Three Strikes statute applied by asking the government if it had any testimony or presentation on the issue. The government responded by introducing certified copies of the judgments from the 1987 conviction and the other conviction on which it relied. The government then called two witnesses to testify as to the facts of the underlying convictions.

---

[2]The government does not contend that a "dangerous weapon" other than a firearm was involved in the 1987 offense. Therefore, we limit our discussion under § 3559(c)(3)(A)(i) to whether the 1987 offense involved the use or threat of use of a firearm.

With respect to the 1987 conviction, the government called FBI Agent Robert Novotny, who was the case agent assigned to investigate the offense. According to Agent Novotny, an informant told the FBI in 1986 that Robert Colley, a Missouri prison inmate, was planning to abduct his ex-wife and the teenage son of a Kansas City bank executive. Because he was incarcerated, Colley needed assistance to carry out the scheme.

Two undercover agents posed as persons willing to assist in the scheme. The agents were to be in contact with a person on the East Coast, who turned out to be Gottlieb. After several phone calls between the agents and Gottlieb, Gottlieb agreed to fly to Kansas City to meet with the agents. Gottlieb asked the agents to provide him with a firearm when he got to Kansas City because he would be unable to bring one with him on the airplane. According to Agent Novotny, Gottlieb "wanted a weapon available for him. . . . [T]hey wanted to show, as I understand it, a true threat to the ex-wife and to get the extortion completed against the bank president, against the bank officer."

Agent Novotny further testified that Gottlieb traveled to Kansas City and met with the agents at a hotel, where they discussed the plan and made phone calls to the bank to determine if the executive's son was at home.[3] The agents then took Gottlieb to their car, which was in the hotel parking lot. In the trunk of

---

[3]Agent Novotny did not state who made the phone calls.

the car, the agents had placed a gym bag containing an inoperative firearm. In addition to the two undercover agents, other agents, including Novotny, were in the vicinity. When Gottlieb reached for the firearm, but before touching it, the agents arrested him. Gottlieb was wearing a bulletproof vest when he was arrested.

After Agent Novotny testified and the government announced that it had no further evidence, Gottlieb took the stand in his own defense. He testified that his only role in the offense was to transport the ransom money to a bank; he was not to be involved in the actual kidnapping. Gottlieb further testified that, upon arriving in Kansas City, he met with the two undercover agents at a hotel and discussed the plan. As the three were walking out of the hotel, there was a discussion about the fact that Gottlieb would be carrying a substantial amount of money. According to Gottlieb, the agents then offered him a firearm. Gottlieb testified: "I was like, whatever. I'm going to be on an airplane in three hours . . . so whatever. . . . I couldn't have taken it to the airport anyway. I would have had to throw it away immediately." Gottlieb testified that one of the agents then opened the trunk of the car, said there was a gun in the trunk, and pointed at the trunk. When Gottlieb turned to look, he was arrested.

The government offered no rebuttal evidence. The government argued that Gottlieb had not met his burden of proving the 1987 offense was a "nonqualifying

felony," stating: "[T]here is just absolutely no way that based upon the record in this case the Court could support that finding." Gottlieb, on the other hand, urged the court to find that the 1987 offense constitutes a "nonqualifying felony" because no firearm was involved in the offense.

The district court ruled from the bench, first finding generally that the government's testimony was more believable than Gottlieb's. The court then concluded that "the defendant has failed to establish by clear and convincing evidence that his prior offenses constitute non-qualifying felonies under 18 U.S.C. § 3559(c)(3)([A]). The defendant is, therefore, subject to mandatory life imprisonment." The court gave no further explanation of its ruling.

The court next found that under the Sentencing Guidelines, Gottlieb's total offense level was 25 and his criminal history category was IV. Thus, based on the Sentencing Guidelines, Gottlieb was subject to imprisonment for a term of 84 to 105 months (7 to 8.75 years).[4] *See* U.S.S.G. Ch. 5, Pt. A. The court, however, sentenced him to life imprisonment.

---

[4]When announcing his proposed findings of fact and tentative sentence, the district court judge stated that the "Guideline provides life imprisonment." According to the Sentencing Guidelines, however, Gottlieb was subject to imprisonment for a term of 84 to 105 months. *See* U.S.S.G. Ch. 5, Pt. A.

## 2. Application of the Three Strikes Statute

To satisfy the first prong of § 3559(c)(3)(A), Gottlieb must show by clear and convincing evidence that (1) no firearm was "used" in the 1987 offense and (2) no "threat of use" of a firearm was involved in the offense. 18 U.S.C. § 3559(c)(3)(A)(i). This court reviews de novo the district court's imposition of a sentence enhancement pursuant to the Three Strikes statute. *See United States v. Romero*, 122 F.3d 1334, 1342 (10th Cir. 1997), *petition for cert. filed* (U.S. Nov. 18, 1997) (No. 97-6863).

### a. "Use" of a Firearm

The Three Strikes statute does not define the word "used" for purposes of determining under § 3559(c)(3)(A)(i) whether a firearm was "used" in the offense. No courts have yet construed the word in the specific context of the Three Strikes statute. Gottlieb, however, argues the Supreme Court's construction of "use" in the context of 18 U.S.C. § 924(c) provides a helpful analogy.

Section 924(c) establishes penalties for a person who "during and in relation to any crime of violence or drug trafficking crime . . . *uses* or carries a firearm." 18 U.S.C. § 924(c)(1) (emphasis added). The Supreme Court has held that "§ 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in

relation to the predicate offense." *Bailey v. United States*, 116 S. Ct. 501, 505 (1995). Elaborating on its holding, the Court noted that "active employment" includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at 508. The term does not, however, encompass mere possession or storage of a firearm. *See id.* The intent to use a firearm, without more, also does not constitute active employment. *See id.* at 509. In reaching its conclusion, the Court relied on the "'ordinary or natural'" meaning of the word "use," "a meaning variously defined as '[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Id.* at 506 (alteration in original) (quoting *Smith v. United States*, 508 U.S. 223, 228-29 (1993) (internal quotations omitted)).

Application of principles of statutory construction indicates the *Bailey* Court's definition of "use" should also be applied to determine under § 3559(c)(3)(A)(i) whether a firearm was "used" in the offense.[5] In accordance

---

[5]The government asserts the *Bailey* Court's analysis of "use" was context specific as to § 924(c) and should not be extended to § 3559(c)(3)(A)(i). The government does not explain, however, why the Court's approach in defining "use" for purposes of § 924(c) should not inform our analysis. Although the government does point out that § 924(c) defines a substantive offense whereas § 3559(c) provides for a sentence enhancement, the government does not adequately explain why that distinction should affect our analysis. Certainly, Congress does not necessarily speak in two different languages depending on whether it is addressing a primary punishment or an enhancement. Importantly, the government also fails to offer an alternative definition of "use."

with the first principle of statutory construction, this court begins with the plain language of the statute. *See id.* As the *Bailey* Court recognized, the plain meaning of the word "use" implies "action and implementation." *Id.*

Another principle of statutory construction, interpreting a word in light of its "placement and purpose in the statutory scheme," *id.*, also suggests employment of the § 924(c) meaning. As Gottlieb points out, applying the same definition of "use" in § 3559(c)(3)(A)(i) as that employed in § 924(c) is particularly appropriate because the Three Strikes statute specifically refers to § 924(c). That reference appears in the definition section of § 3559(c), where the term "firearms use," which is itself considered a "serious violent felony," is defined as

> an offense that has as its elements those described in section 924(c) or 929(a), if the firearm was brandished, discharged, or otherwise used as a weapon and the crime of violence or drug trafficking crime during and [in] relation to which the firearm was used was subject to prosecution in a court of the United States or a court of a State, or both.

18 U.S.C. § 3559(c)(2)(D). Although § 3559(c)(3)(A)(i) does not itself refer to § 924(c), it would be anomalous to define firearms "use" one way for purposes of one subsection of the Three Strikes statute and another way for purposes of a different subsection.[6] *Cf. Bailey*, 116 S. Ct. at 507 ("'[U]sing a firearm' should

---

[6]The Ninth Circuit has apparently rejected the analogy to § 924(c). In *United States v. Morrison*, 113 F.3d 1020 (9th Cir.), *cert. denied*, 118 S. Ct. 583

-10-

not have a 'different meaning in § 924(c)(1) than it does in § 924(d).'" (quoting

*Smith v. United States*, 508 U.S. 223, 235 (1993)); *United Sav. Ass'n v. Timbers*

*of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . .

is a holistic endeavor. A provision that may seem ambiguous in isolation is often

clarified by the remainder of the statutory scheme--because the same terminology

is used elsewhere in a context that makes its meaning clear . . . ."); *Sorenson v.*

*Secretary of the Treasury of the United States*, 475 U.S. 851, 860 (1986) ("The

---

(1997), the defendant argued that one of his prior convictions constituted a "nonqualifying felony" under § 3559(c)(3)(A). *See id.* at 1021. The prior conviction the defendant in *Morrison* sought to disqualify was a guilty plea that included a firearm use enhancement under the California Penal Code. *See id.* at 1022. The enhancement applies if a defendant "'personally uses a firearm in the commission or attempted commission of a felony.'" *Id.* at 1021 n.3 (quoting Cal. Penal Code § 12022.5(a)(1)). The court concluded that because the defendant had previously "pleaded guilty to firearm use," he was precluded from arguing for purposes of § 3559(c)(3)(A) that he did not use a firearm. *Id.* at 1021. In other words, whether the defendant used a firearm during the prior crime was "*res judicata*," and the defendant did not now "have the right to rebut facts necessarily adjudicated by the earlier judgment." *Id.* at 1022.

In a footnote, the court noted the defendant had argued that for the prior offense to qualify as a strike, "it must involve 'use' of a weapon as defined in *Bailey*." *Id.* at 1022 n.6. The court then concluded: "This is a misreading of section 3559. Its list of 'serious violent felon[ies]' includes, *inter alia*, 'firearms use' and 'robbery.' While the section pertaining to 'firearms use' makes explicit reference to section 924(c), *see* 18 U.S.C. § 3559(c)(2)(D), the section pertaining to robbery does not. *See* 18 U.S.C. § 3559(c)(3)(A)." *Morrison*, 113 F.3d at 1022 n.6 (alteration in original). The court did not define "use" for purposes of § 3559(c)(3)(A)(i).

Although this court recognizes that § 3559(c)(3)(A)(i) does not specifically refer to § 924(c), we think it is nevertheless appropriate to interpret the word "use" consistently throughout the Three Strikes statute.

normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." (internal quotations omitted)).

The government appears to argue that "use" should be interpreted broadly to include both intent to use a firearm and mere possession of a firearm. *Bailey*, however, teaches that the plain meaning of the word "use" does not support that construction. *See Bailey*, 116 S. Ct. at 506. Further, had Congress intended to include intent to use a firearm or possession of a firearm within the scope of § 3559(c)(3)(A)(i), it could have done so expressly, as it has in other contexts. *Cf. id.* at 509 ("Congress knew how to draft a statute to reach a firearm that was 'intended to be used'"). For example, in 18 U.S.C. § 924(d), Congress provided for forfeiture of "[a]ny firearm or ammunition involved in or *used* in . . . or . . . *intended to be used* in" certain specified offenses. 18 U.S.C. § 924(d)(1) (emphasis added); *cf.* U.S.S.G. § 2K2.1(b)(5) (increasing offense level for certain firearm offenses if defendant "used or possessed" a firearm in connection with another felony or "possessed" a firearm with "intent" that it would be "used or possessed" in connection with another felony). Because Congress knew how to address intent to use a firearm and possession of a firearm, but chose not do so in § 3559(c)(3)(A)(i), it would be inappropriate for this court to effectively usurp the legislative function by interpreting "use" broadly to include those terms.

Based on the language and context of the Three Strikes statute,[7] this court

_____

[7]The legislative history does very little to clarify the meaning of the words "use" and "threat of use" in § 3559(c)(3)(A)(i).  Congress passed the Three Strikes statute in 1994 as part of a larger crime bill, H.R. 3355.  *See* Violent Crime Control & Law Enforcement Act of 1994, Pub. L. No. 103-322, § 70001, 108 Stat. 1796, 1982 (codified at 18 U.S.C. § 3559(c)).  As originally introduced in 1993, H.R. 3355 did not contain a three strikes provision.  *See* H.R. 3355, 103d Cong. (as introduced Oct. 26, 1993).

After H.R. 3355 passed the House, the Senate amended it by inserting the text of S. 1607, which contained a three strikes provision.  *See* H.R. 3355, 103d Cong. § 511 (as amended by Senate Nov. 19, 1993).  As originally introduced, however, S. 1607 did not contain a three strikes provision.  *See* S. 1607, 103d Cong. (as introduced Nov. 1, 1993).  The Senate subsequently amended the bill to include such a provision.  *See* 139 Cong. Rec. S15,258-62, S15,269 (daily ed. Nov. 8, 1993) (statement of Sen. Lott) (proposing amendment); 139 Cong. Rec. D1265 (daily ed. Nov. 8, 1993) (adopting amendment).  S. 1607's version of the three strikes provision, however, provided no exception for "nonqualifying felonies."  *See* H.R. 3355, 103d Cong. § 511 (as amended by Senate Nov. 19, 1993).

After the Senate amended H.R. 3355, it went back to the House, where it was again amended, this time by inserting the text of H.R. 4092.  *See* H.R. 3355, 103d Cong. (as amended by House Apr. 21, 1994).  H.R. 4092, as originally introduced, contained a three strikes provision which included an exception for "nonqualifying felonies."  *See* H.R. 4092, 103d Cong. § 501 (as introduced Mar. 18, 1994).  In its original form, H.R. 4092 required a defendant to prove by clear and convincing evidence that "no firearm or other dangerous weapon was *involved* in the offense."  *Id.* (emphasis added).  Prior to inserting the language of H.R. 4092 into H.R. 3355, however, the House amended the "nonqualifying felonies" section, adopting the current language.  *See* 140 Cong. Rec. H2415, H2432 (daily ed. Apr. 19, 1994) (statement of Rep. Volkmer) (proposing amendment).  The House also amended H.R. 4092 by adding two more offenses to the list of "serious violent felonies."  *See id.*  The Conference Committee thereafter retained in H.R. 3355 the amended three strikes provision of H.R. 4092, and both the House and Senate concurred.  *See* H.R. 3355, 103d Cong. § 70001 (enrolled version Aug. 25, 1994).

The original version of the "nonqualifying felonies" provision, requiring a defendant to prove that no firearm was "involved" in the offense, is broader than the adopted version, requiring a defendant to prove that his actions did not

concludes the word "used" in § 3559(c)(3)(A)(i) means "active employment," as that term is defined in *Bailey*. *See Bailey*, 116 S. Ct. at 508-09. Therefore, to come within the purview of the "nonqualifying felony" exception, a defendant must establish by clear and convincing evidence that, *inter alia*, no firearm was actively employed in the offense.

In this case, the underlying offense was conspiracy to commit robbery. Gottlieb never completed the substantive offense of robbery. When the

constitute the "use" or "threat of use" of a firearm. Under the adopted version, therefore, it appears more defendants would be able to take advantage of the "nonqualifying felonies" exception and consequently avoid application of the Three Strikes statute.

According to those Representatives who spoke in favor of the amendment, however, the amendment was apparently intended to strengthen the statute. Representative Volkmer, who proposed the amendment, stated that the amendment would "add[] language to require proof that there was no threat of use of [a] firearm or other dangerous weapon during a robbery, or an attempt, conspiracy, or solicitation to commit robbery." 140 Cong. Rec. H2415, H2432 (daily ed. Apr. 19, 1994). Representative McCollum offered his support for the amendment and stated that he and Volkmer had "discussed several weeks ago how the legislation has some weaknesses in the definition." *Id.* Representative Hoyer stated that the amendment would "strengthen[] the bill by increasing the number of repeat offenders subject to the three strikes" and would "close loopholes which may have been left open." *Id.* No one spoke against the proposed amendment. *See id.* at H2433.

It is difficult to reconcile the stated views with the apparent effect of the amendment. While the amendment to the "nonqualifying felonies" exception seemingly reduces the number of defendants ultimately subject to the Three Strikes statute, the Representatives who spoke in favor of the amendment heralded it as strengthening the statute. Thus, Congress' intended meaning of the words "use" and "threat of use" in § 3559(c)(3)(A)(i) is not clarified by the legislative history of the Three Strikes statute.

underlying crime is an inchoate rather than a substantive offense, application of the *Bailey* definition of "use" is more difficult. At least one court has recognized this conundrum in the § 924(c) context. *See United States v. Phan*, 121 F.3d 149, 152-53 (4th Cir. 1997) (upholding defendant's § 924(c) conviction for "using" firearm during and in relation to conspiracy, where substantive crime was never committed), *cert. denied*, 1998 WL 69407 (Feb. 23, 1998); *cf. United States v. Lampley*, 127 F.3d 1231, 1240-41 (10th Cir. 1997) (noting that in determining under § 924(c) whether defendants "carried" firearms "during and in relation to" the conspiracy, court is "faced with a difficult task" when "the conspiracy never resulted in an underlying substantive crime"), *cert. denied*, 1998 WL 19401 (Feb. 23, 1998), *and* 1998 WL 38041 (Feb. 23, 1998), *and* 1998 WL 54259 (Mar. 9, 1998).

In *Phan*, the defendant was found guilty of conspiracy to commit robbery in violation of 18 U.S.C. § 1951 and of using a firearm during and in relation to a crime of violence in violation of § 924(c). *See Phan*, 121 F.3d at 151-52. Like Gottlieb, the defendant in *Phan* was arrested before committing the substantive crime of robbery. *See id.* at 151. In considering whether the defendant's § 924(c) conviction should be upheld, the court first noted that conspiracy to commit robbery may serve as the predicate offense for § 924(c) liability. *See id.* at 152-53. The court then stated that application of *Bailey* is "straightforward" in "cases

where conspiracy to commit a violent crime is the predicate offense, and the underlying [substantive] crime has been committed." *Id.* at 153. The court recognized, however, that in cases where the substantive crime has not been committed, "*Bailey* offers only imperfect guidance" on the question of whether a firearm was "used" during and in relation to the predicate offense of conspiracy. *See id.*

In discussing the parameters of "use" in the context of a conspiracy, the *Phan* court first noted that "[i]f [the defendant] had merely possessed the handguns at the time of the conspiracy, even if he intended to use them during the robbery, we would be forced to vacate his conviction under *Bailey*." *Id.* The court next stated that to affirm the defendant's conviction, it need not find that the defendant "actively employed the handguns in one of the ways listed in *Bailey*," for *Bailey* recognized that "'use' takes on different meanings depending on context." *Id.* The court then concluded that "[i]n the context of the inchoate crime of conspiracy to commit robbery, we find that the giving of firearms to a fellow conspirator constitutes active employment."[8] *Id.*

---

[8]Prior to the planned robbery, the defendant in *Phan* discussed with his coconspirators the need to carry firearms during the robbery and provided one of the coconspirators with two loaded handguns. *See United States v. Phan*, 121 F.3d 149, 151-52 (4th Cir. 1997), *cert. denied*, 1998 WL 69407 (Feb. 23, 1998). On the day of the intended robbery, the coconspirators placed the firearms under the seat of their car and drove to the robbery site. *See id.* at 152. They were arrested before the robbery took place. *See id.* at 151. The defendant did not

Although *Phan* involved firearms "use" in the context of a § 924(c) conviction, the analysis is applicable in determining whether a firearm was "used" for purposes of § 3559(c)(3)(A)(i) of the Three Strikes statute. As discussed above, it is undisputed that Gottlieb was arrested before he even touched the firearm in question. The firearm was at all times under the sole control of the federal agents. At best, the evidence shows Gottlieb attempted to acquire and intended to possess a firearm during the planned but frustrated robbery. As the court recognized in *Phan*, this is insufficient to constitute "use" under *Bailey*. *See id.* Consequently, Gottlieb has met his burden of establishing that he did not "use" a firearm in connection with the 1987 offense.

**b. "Threat of Use" of a Firearm**

The Three Strikes statute also does not define "threat of use" for purposes of determining whether an offense involved the "threat of use" of a firearm under § 3559(c)(3)(A)(i). Furthermore, no court has expressly defined "threat of use" in this context.

Gottlieb argues the word "threat" generally, and especially in criminal statutes, "means a communicated intent to engage in a harmful act against someone or something." Gottlieb argues that under this definition of "threat," the 1987 offense did not involve the "threat of use" of a firearm, particularly in light

accompany the coconspirators to the robbery site. *See id.*

-17-

of the absence of evidence that the intended victims even knew of the existence of the scheme.

Gottlieb's proposed definition of "threat" is consistent with the one federal court case discussing the term in the context of the Three Strikes statute. In *United States v. Washington*, 109 F.3d 335 (7th Cir.), *cert. denied*, 118 S. Ct. 134 (1997), the defendant, who was sentenced to life imprisonment under the Three Strikes statute, argued on appeal that his three bank robbery convictions constituted "nonqualifying felonies" under § 3559(c)(3)(A). *See id.* at 337. In each of the bank robberies, the defendant utilized a written note which stated, among other things, "'I have a gun.'" *Id.* The court summarily concluded that "[s]uch a statement implies a 'threat of use of a firearm' and prevents [the defendant] from satisfying subsection (i) [of § 3559(c)(3)(A)]." *Id.* Although the *Washington* court did not expressly define "threat of use," its holding indicates the term includes a communicated expression to a victim that the defendant would use a firearm.

Relying on *Washington*, the government asserts Gottlieb's actions in this case constituted a "threat of use" of a firearm.[9] Unlike the defendant in

---

[9]The government asserts that Gottlieb's request of the firearm and his reaching for the firearm "is the functional equivalent of [the *Washington*] defendant's three notes to bank tellers stating, 'I have a gun.'" The government, however, fails to develop this mere assertion by explaining precisely how Gottlieb's actions are the "functional equivalent" of communicating a threat to a

*Washington*, however, Gottlieb did not communicate to any intended victim a threat to use a firearm. The presence of undercover agents assured there was not even a reasonable possibility that Gottlieb would come into contact with his intended victims. The holding of *Washington* is therefore inapposite; its focus on a "threat" as a communication, however, is instructive.

Gottlieb's argument that "threat of use" of a firearm means a communicated intent to use a firearm is also consistent with the plain meaning of the word "threat." *See* Webster's Third New International Dictionary 2382 (1993) (defining "threat" as an "expression of an intention to inflict loss or harm on another by illegal means and esp[ecially] by means involving coercion or duress of the person threatened"); Black's Law Dictionary 1480 (6th ed. 1990) (defining "threat" as "[a] communicated intent to inflict physical or other harm," "[a] declaration of an intention to injure," "[a] declaration of intention or determination to inflict punishment, loss, or pain," and "an avowed present determination or intent to injure"). Interpreted broadly, however, the word "threat" can also mean a "risk" that something will occur. *See* Webster's, *supra*, at 2382 (defining "threat" as "an indication of something impending and usu[ally] undesirable or unpleasant," as in "the air held a [threat] of rain").

victim.

-19-

The government apparently advocates this broader definition of "threat." Specifically, the government argues that "Gottlieb's actions of requesting a firearm . . ., dressing prepared to use a firearm ('wearing a bulletproof vest . . .'), and . . . reaching for the firearm prevent Gottlieb from meeting the no-threat requirement."[10]

Gottlieb recognizes that "threat of use" may be interpreted to mean "risk of use" but argues that if this broad definition were adopted, "virtually every robbery would be a qualifying felony because every robbery can be said to involve some inherent risk of use of a firearm." There is a difference, however, between a general risk inherent in all violent crimes that a firearm may be used and a demonstrated risk that a firearm will be used in a particular offense. Therefore, if "threat of use" were interpreted broadly to include "risk of use," the "nonqualifying felonies" exception would still have meaning. *Cf. Bailey*, 116 S. Ct. at 506 (noting that in determining meaning of statutory language, court should act "with the assumption that Congress intended each of [the statutory] terms to have meaning").

This court need not decide, however, whether "threat of use" of a firearm as used in § 3559(c)(3)(A)(i) means a communicated intent to use a firearm,

---

[10]The government makes no attempt to expressly define "threat of use." Rather, the government summarily asserts that Gottlieb's actions constituted such a threat.

whether it means a risk that a firearm would be used in the offense, or whether it incorporates both meanings. Under any of these formulations, Gottlieb's actions did not constitute a "threat." It is undisputed that Gottlieb was arrested before he even touched the firearm and before he ever came into contact with his intended victims. Gottlieb therefore never had the opportunity to threaten anyone with the firearm. Further, as Gottlieb notes, the firearm was at all times under the sole control of the federal agents and at a place distant from the site of the intended substantive crime. Thus, there was never any actual risk that the firearm would be used in the offense. Under the discrete facts of this case, therefore, the defendant has met his burden of establishing by clear and convincing evidence that no "threat of use" of a firearm was involved in the 1987 offense.

### 3.    Summary

The government concedes that the 1987 offense did not result in death or serious bodily injury, therefore satisfying the second prong of § 3559(c)(3)(A). This court concludes that Gottlieb has established by clear and convincing evidence that the 1987 offense did not involve the "use" or "threat of use" of a firearm, therefore satisfying the first prong of § 3559(c)(3)(A). Gottlieb's 1987

conviction thus constitutes a "nonqualifying felony" under § 3559(c)(3)(A) and cannot be used as a "strike" for purposes of satisfying § 3559(c)(1).[11]

## B. Restitution

Gottlieb next argues the district court erred in failing to make his restitution obligation joint and several with that of a codefendant who was also ordered to make full restitution. The government agrees that Gottlieb's obligation should be joint and several and argues that the district court's "oral orders . . . clearly evince an intent that restitution be joint and several among Gottlieb and his codefendants." Based on the district court's statements at the sentencing hearing, it appears the court intended Gottlieb's restitution obligation to be joint

---

[11]Gottlieb also argues that requiring him to prove by clear and convincing evidence that the 1987 offense did not involve the use or threat of use of a firearm violated his right to due process. Because this court concludes that Gottlieb has satisfied this heightened standard, we need not decide whether imposition of the standard in the context of the Three Strikes statute violates his due process rights.

and several.[12]  As Gottlieb notes, however, the box labeled "joint and several" on the district court's judgment is not checked.

Restitution in this case was ordered pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663.  "A sentencing court may not order restitution under the VWPA in an amount greater than the total loss caused by a defendant's conduct."  *United States v. Harris*, 7 F.3d 1537, 1539 (10th Cir. 1993).  In cases such as this when there are multiple defendants, "the VWPA does not indicate how a court should apportion a restitution award."  *Id.* at 1540.  As this court has held, however, a sentencing court may not require each codefendant to pay restitution for the entire loss suffered by the victim, because "victims theoretically could [thereby] receive more in restitution than they had lost, a result at odds with both the VWPA's limited purpose and its language."  *United*

---

[12]According to the judgment entered by the court, the total loss to the bank was $30,757.  Of that amount, $2225 was recovered, leaving a balance of $28,532.  At sentencing, the district court ordered Gottlieb to make restitution in the amount of $28,532.  After the district court made its finding regarding restitution, Gottlieb's counsel objected, stating:  "[T]here are two co-defendants and I think restitution, the Court indicated, would be solely the responsibility of Mr. Gottlieb."  The court responded:  "It will be solely their responsibility, too. All of them have full responsibility."  Gottlieb's counsel then indicated his objection was resolved.
According to the judgment entered for Mr. Hoffman, Gottlieb's codefendant, the court ordered Mr. Hoffman to make restitution in the amount of $29,757.  The judgment in Mr. Hoffman's case states that the total loss to the bank was $30,757, with no offsetting loss recovered.  It is unclear from the record why the court ordered Mr. Hoffman to pay more than Gottlieb.

*States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993) (vacating restitution order after concluding district court exceeded its statutory authority because total amount of restitution orders imposed on codefendants exceeded total loss caused by conspiracy).

If, as Gottlieb claims, the district court ordered Gottlieb and his codefendant to each pay the full amount of the loss suffered by the bank, the court exceeded its statutory authority. *See id.* On the other hand, if the court intended the restitution obligations of Gottlieb and his codefendant to be joint and several, the court acted within its authority. *See Harris*, 7 F.3d at 1540. Because it is unclear from the record what the district court intended, this court vacates Gottlieb's restitution order and remands to the district court for clarification.

### III. CONCLUSION

For the reasons discussed above, this court **VACATES** Gottlieb's sentence and restitution order and **REMANDS** to the district court for resentencing and for clarification of the restitution order.[13]

---

[13]Approximately three-and-one-half months after oral argument in this case, Gottlieb filed a Motion for Leave to File Supplemental Opening Brief. According to the Motion, Gottlieb had recently become aware of and notified his counsel of a Second Circuit case decided in 1997, *United States v. Collado*, 106 F.3d 1097 (2d Cir. 1997), which Gottlieb asserts held that "under 21 U.S.C. § 851(a), an enhanced sentence cannot be imposed unless the predicate offense forming the basis for the enhanced sentence was prosecuted by indictment or waiver thereof." The Three Strikes statute incorporates the indictment requirement of § 851(a). *See* 18 U.S.C. § 3559(c)(4).

According to the Motion, one of the prior offenses the government relied on in enhancing Gottlieb's sentence "was prosecuted by information rather than by indictment or waiver thereof." Gottlieb therefore argues that if the Second Circuit's interpretation of § 851(a) is correct, he should not have been sentenced under the Three Strikes statute. Gottlieb further notes, however, that this court has already rejected the Second Circuit's interpretation of § 851(a)'s indictment requirement. *See United States v. Adams*, 914 F.2d 1404, 1407 (10th Cir. 1990). Gottlieb thus states he is raising the issue here "simply to preserve his right to petition the Supreme Court to consider the issue, should a petition for certiorari be necessary."

This court grants Gottlieb's motion to file the supplemental brief. In light of our conclusion that Gottlieb should not have been sentenced under the Three Strikes statute because his 1987 offense constitutes a "nonqualifying felony," this court need not and does not address Gottlieb's alternative argument that the statute should not apply because one of his prior "strikes" was prosecuted by information rather than by indictment or waiver thereof.