**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 18 2000**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

PHILLIP BREDY,

     Defendant-Appellant.

No. 99-6119

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 98-CR-135)**

---

Teresa Brown, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Edward J. Kumiega and Mark A. Yancey, Assistant U.S. Attorneys (Patrick M. Ryan, United States Attorney, with them on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **BALDOCK**, **McKAY**, and **BRORBY**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

     Defendant Phillip Bredy appeals his convictions and sentence for four

armed robbery and firearms violations. At approximately 2:00 p.m. on May 2,

1998, the Homeland grocery store located on 18th and Classen Streets in

Oklahoma City, Oklahoma, was robbed. A number of employees and customers witnessed the robbery. The robber, a Caucasian man, wore a mask resembling Ronald Reagan or Richard Nixon, tan pants, a striped shirt, and a black watch, and he carried a sawed-off shot gun. After striking one check-out clerk with the barrel and butt of the gun, the robber demanded and received from two other clerks cash and personal checks totaling approximately $680 in a Homeland plastic grocery bag. Several witnesses observed the robber exiting the store, running across the street, and getting into a car parked in an alley. One of those witnesses followed the car, a blue Chevrolet with an out-of-state license plate, until police pulled it over. The police arrested Defendant, who was the driver and lone occupant of the car. The arresting officers searched the vehicle and found a sawed-off shotgun, a rubber Ronald Reagan mask, and a Homeland grocery bag containing cash in the amount of $344 and several checks. Defendant had an additional $257.81 cash in his pants pocket. Shortly after arresting Defendant, the police drove him back to the Homeland grocery store so that witnesses could observe his clothing and physical characteristics. Four of five witnesses positively identified Defendant as the robber; the remaining witness indicated that she was fairly certain. Prior to the identification procedure, all of the witnesses gave the police virtually identical descriptions of the robber.

Defendant was indicted for and convicted of interfering with commerce by

robbery in violation of 18 U.S.C. § 1951, using a firearm during the commission of the robbery in violation of 18 U.S.C. § 924(c)(1), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). The district court sentenced Defendant to three concurrent terms consisting of life imprisonment, fifteen-years' imprisonment, and ten-years' imprisonment, to one term of 120 months to run consecutive to the other three terms, and to various terms of supervised release.

Defendant raises two issues on appeal. First, he alleges that the district court erred in denying his motion to suppress witness identifications because they were unduly suggestive and unreliable. Second, he complains that the district court erred in using two prior convictions that were more than fifteen years old to enhance his sentence under the Three Strikes statute, 18 U.S.C. § 3559(c).

## I.

Defendant contends that the district court erred in denying the motion to suppress the identifications made both out of court and in court. He asserts that the show-up identification procedure conducted at the Homeland grocery store was unnecessarily suggestive and prejudiced the subsequent identifications at trial. "[T]he ultimate conclusion of the constitutionality of identification

-3-

procedures is a mixed question of law and fact" which is subject to de novo review. Archuleta v. Kerby, 864 F.2d 709, 710 (10th Cir. 1989). We review the district court's factual findings for clear error. See United States v. Thody, 978 F.2d 625, 629 (10th Cir. 1992).

In evaluating the constitutionality of a pretrial identification procedure, we first examine whether the procedure was unnecessarily suggestive. See Grubbs v. Hannigan, 982 F.2d 1483, 1489 (10th Cir. 1993) (citing Archuleta, 864 F.2d at 711). If the court determines that the procedure was unnecessarily suggestive, we then examine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 188, 199 (1972). Stated differently, we evaluate the reliability of the identification under the totality of the circumstances to determine whether the suggestive show-up "created a substantial likelihood of irreparable misidentification." Thody, 978 F.2d at 629. A pretrial identification procedure does not violate due process unless it is "so unnecessarily suggestive that it is 'conducive to irreparable mistaken identification.'" Grubbs, 982 F.2d at 1490 (quoting Kirby v. Illinois, 406 U.S. 682, 691 (1972)).

In its order denying the motion to suppress, the district court did not rule on the suggestiveness of the show-up procedure. Instead, the court analyzed the reliability of the identifications and determined that the identifications were

-4-

sufficiently reliable "to outweigh any suggestiveness resulting from the identification procedure." R., Vol. 1, Doc. 31 at 5. Although we doubt that the show-up in this case was unnecessarily suggestive, we need not reach that issue. Assuming that the show-up procedure was unnecessarily suggestive, we proceed to the "linchpin" question – the reliability of the identifications. Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

When evaluating the reliability of an identification, courts must examine five factors, namely:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil, 409 U.S. at 199-200. Applying these factors, we agree with the district court's conclusion that the identifications were "reliable and [that] the degree of reliability outweigh[ed] the suggestiveness of the identification procedure." R., Vol. 1, Doc. 31 at 4.

First, the witnesses had ample opportunity to closely view the robber during and after the robbery. James Perry testified that he had just finished shopping at the grocery store and was waiting in front of the store for a cab when the robber spoke to him and passed within one foot of him to enter the store. Mr. Perry proceeded to attentively watch the robbery take place through the store windows

and then saw the robber leave the store, cross the street, and enter an alley where a car was parked. When the robber was leaving the store, he walked within five to six feet of Mr. Perry. Thus, Mr. Perry had ample time to observe the robber, his clothing, his demeanor, and what he was carrying.

Mary Williams, an employee of Homeland, testified that she witnessed the robbery from her position behind one of the registers. She stated that she saw the robber beating another employee and that the robber asked her for the money from her register. Ms. Williams gave the robber the money, including cash and checks, and a plastic Homeland grocery bag. She also observed the robber take more money from another clerk, and she watched him leave the store and run down the sidewalk. She testified that she observed the type of gun the robber was carrying, the robber's race, what he was wearing, and the hair on his neck.

Chanaye Lea Anderson, another Homeland employee, testified that she watched the robber hit her coworker with a gun, that she observed that the gun was a sawed-off shotgun, and that the robber confronted her face-to-face when he demanded money from her register. She stated that she observed what the robber was wearing and that she specifically remembered that he had on a black wristwatch.[1]

---

[1]Two of the five witnesses who participated in the show-up procedure did not testify at trial. According to the testimony of one of the responding police

(continued...)

Second, the testimony of the witnesses indicates that their attention was focused primarily on the robber while the crime took place. Their ability to recall a number of descriptive details, from the clothing the robber was wearing to the hair on his neck, shows that their attention was focused on him.

Third, as the district court found, the witnesses' descriptions of the robber were virtually identical. Although they could not see his face, the witnesses accurately described the robber as a white male, wearing a Ronald Reagan (or Nixon) type mask, wearing tan, beige, or khaki pants and a striped shirt, and carrying a sawed-off shot gun. The police recorded these descriptions before the show-up took place. In addition, both Ms. Williams and Ms. Anderson testified at trial that the robber's sleeves were rolled up. While it is true that the height descriptions varied from 5'6" to 5'8", this degree of difference is minor. See Archuleta, 864 F.2d at 712. The fact that the robbery occurred during the middle of afternoon and that at least two of the show-up witnesses observed Defendant outside in the daylight further supports the reliability of the identifications.

Further, testimony by two additional witnesses, Jonathan Davis and Dennis Coon, corroborated the descriptions made by the five show-up witnesses. Mr. Davis was the Homeland employee whom the robber hit with his gun. Mr. Coon

---

[1](...continued)
officers, their descriptions matched that of the other three witnesses and they unequivocally identified Defendant as the robber.

almost hit the robber with his car, observed the same man getting into a blue Chevrolet Celebrity in an alley, and followed the car until the police stopped it. Neither of these two witnesses participated in the show-up identification. Their testimony supports the accuracy and reliability of the show-up identifications.

Fourth, three of the five show-up witnesses were unequivocal when they initially identified Defendant as the robber. These three witnesses identified Defendant immediately and without hesitation. In his testimony at trial, Mr. Perry was very certain of Defendant's identity as the robber. The fourth witness, Ms. Anderson, was "pretty sure" that Defendant was the robber when she first saw him at the show-up, but she then positively identified Defendant as the robber once she saw his wrist watch. R., Vol 2 at 14. Her testimony at trial was consistent with her earlier identification. Although the fifth witness, Ms. Williams, could not identify Defendant at trial, she was almost but not completely sure of the identity of the robber at the show-up, and her testimony concerning the description of the robber was unequivocal. Any uncertainty in her identification does not deprive the rest of the identifications of reliability.

Fifth, the witnesses identified Defendant approximately thirty minutes after the robbery occurred. "This is a very short interval of time, which adds to the reliability of the identification." Archuleta, 864 F.2d at 712 (noting that a thirty-minute "interval is much shorter than the seven months in Neil and the two days

in Manson, which the Supreme Court held were not too long"); see also Thody, 978 F.2d at 629 (determining that witnesses' identification testimony was sufficiently reliable in part because "only one week separated the confrontation from the robbery").

Weighing all the factors and the totality of the circumstances, we conclude that the district court's factual findings are not clearly erroneous and that the show-up identification procedure contained sufficient indicia of reliability. Because there was no substantial likelihood of misidentification, the district court properly admitted the identification testimony.

**II.**

Defendant also challenges the district court's imposition of a life sentence for count one based on the Three Strikes statute, 18 U.S.C. § 3559(c). At sentencing, the district court considered and rejected Defendant's argument that the use of his eighteen-year-old and twenty-seven-year-old armed bank robbery convictions under § 3559(c) violated due process. The court reasoned that there was no legal support for imposing any time limit on convictions used as strikes. See Supp. R., Sentencing Tr. at 311. Defendant argues on appeal that the application of § 3559(c) violates his substantive due process rights because the statute's lack of an age limit on predicate convictions is "arbitrary." Appellant's

-9-

Br. at 15. We review de novo the district court's decision to impose a sentence enhancement pursuant to the Three Strikes statute. See United States v. Gottlieb, 140 F.3d 865, 868 (10th Cir. 1998).

Under the Three Strikes statute, a defendant receives mandatory life imprisonment if he is convicted of a serious violent felony and has previously been convicted of two or more serious violent felonies. See 18 U.S.C. § 3559(c)(1)(A)(i). Due process requires only that a sentencing scheme be rational. See Chapman v. United States, 500 U.S. 453, 465 (1991).

The age limitation issue appears to be one without precedent in this court. Several circuit courts have considered and rejected various challenges to the constitutionality of the Three Strikes statute. See, e.g., United States v. Kaluna, 192 F.3d 1188, 1198-2000 (9th Cir. 1999) (ruling that Three Strikes statute does not violate Double Jeopardy Clause, separation of powers principle, Ex Post Facto Clause, or Eighth Amendment's proportionality guarantee), cert. denied, __ U.S. _ _ , 2000 WL 339428 (U.S. Apr. 3, 2000) (No. 99-7620); United States v. Wicks, 132 F.3d 383, 387-90 (7th Cir. 1997) (holding that Three Strikes law does not violate due process, equal protection, separation of powers doctrine, or Commerce Clause); United States v. Rasco, 123 F.3d 222, 226-27 (5th Cir. 1997) (ruling that statute does not violate the doctrine of separation of powers or the Ex Post Facto Clause); United States v. Washington, 109 F.3d 335, 338 (7th Cir. 1997) (holding

that statute does not violate Eighth Amendment prohibition against cruel and unusual punishment, Ex Post Facto Clause, Double Jeopardy Clause, equal protection, separation of powers doctrine, or due process); United States v. Farmer, 73 F.3d 836, 839-41 (8th Cir. 1996) (making same ruling but not addressing separation of powers argument). However, none of these cases have addressed the substantive due process challenge before us today.

In an unpublished decision, the Fourth Circuit considered this precise age limitation question in light of a substantive due process challenge to the constitutionality of § 3559(c). See United States v. Boone, 155 F.3d 561, 1998 WL 398782, **2 (4th Cir. 1998) (Table). Relying on precedent addressing the Armed Career Criminal Act, 18 U.S.C. § 924(e), and Chapman, 500 U.S. at 465, the Fourth Circuit held that "the 'three-strikes' enhancement is not based on an arbitrary distinction" even though "relatively 'old' conviction[s]" may constitute strikes. Boone, 1998 WL 398782, at **2; see also United States v. Jackson, 18 F. Supp.2d 566, 568 (D. Md. 1998) (summarily holding that "the statute's allowing convictions to qualify as predicate offenses without a limitation on their age" does not violate substantive due process because it does not shock the conscience), aff'd, 182 F.3d 910, 1999 WL 454567, **7 (4th Cir. 1999), cert. denied, __ U.S. __ , 120 S. Ct. 1178 (2000).

This court too has spoken on the age limitation question but not expressly

in the context of a substantive due process challenge. See <u>United States v. Eaton</u>, __ F.3d __ , 2000 WL 293789, *3 (10th Cir. 2000) (Table). In <u>Eaton</u>, the district court imposed a life sentence under § 3559(c) based on two prior convictions that were more than fifteen years old. The Tenth Circuit upheld the life sentence, relying in part on the fact that convictions more than fifteen years old may be the basis of a sentencing enhancement pursuant to the Armed Career Criminal Act. See <u>id.</u> (citing <u>United States v. Lujan</u>, 9 F.3d 890, 893 (10th Cir. 1993)). The court also reasoned that "Congress had a rational basis for creating a statute that imprisons repeat offenders for life for the protection of society." <u>Id.</u>

Though we are not bound by unpublished panel decisions of this court, we fully agree with the reasoning of both <u>Eaton</u> and <u>Boone</u>. We therefore hold that the Three Strikes statute's lack of time limitations on predicate convictions does not violate substantive due process. The district court properly concluded that Defendant's convictions may be used to apply the mandatory life imprisonment enhancement under § 3559(c).

We AFFIRM Defendant's conviction and sentence.