**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 24, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EVERETT BERNARD
ROBINSON,

Defendant-Appellant.

No. 07-6220
(W.D. Okla.)
(D.C. No. 5:07-CR-00072-R-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, and **BRISCOE** and **LUCERO**, Circuit Judges.

---

On December 9, 2006, an Oklahoma City police officer detained Everett

Bernard Robinson outside an apartment complex and discovered a gun in his right

pocket. The government subsequently charged Mr. Robinson with possession of a

firearm after a felony conviction, a violation of 18 U.S.C. § 922(g)(1), and a jury

convicted him of that offense. In light of Mr. Robinson's three prior felony

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

convictions, the district court imposed an enhanced sentence of 180 months under the Armed Career Criminal Act, 18 U.S.C. § 924(e).

In this appeal, Mr. Robinson argues that the district court (1) erred in denying his motion to dismiss because the police officer lacked reasonable suspicion to detain him; (2) violated his Confrontation Clause rights by admitting a tape of a 911 telephone call; and (3) erred in refusing to give his requested jury instruction on the theory of defense of another (which stated that Mr. Robinson could defeat the § 922(g) firearms charge if the evidence indicated that he was carrying the gun to protect someone else from death or serious bodily injury). Mr. Robinson further argued that (4) the enhancement of his sentence under the Armed Career Criminal Act violated his substantive due process rights because two of the prior convictions occurred in 1971 and 1989.

We are not persuaded by these arguments and therefore affirm Mr. Robinson's conviction and sentence.

## I. BACKGROUND

On December 9, 2006, at approximately 8:15 p.m., the Oklahoma City Police Department received a 911 call from the Heritage Point Apartment complex in northeast Oklahoma City. The caller stated that a black man named Everett was outside with a pistol. The caller added that the man was threatening a lady and her daughter, that the man was in the back of the complex, and that he was wearing a white coat.

-2-

Officer Greg Kennedy responded to the call. At the same apartment complex, he had previously investigated domestic disturbances, shootings, and reports of stolen vehicles, and he viewed it as a high crime area.

As he approached the apartment complex in his patrol car, the officer saw a black man, the defendant Mr. Robinson, wearing what appeared to be a white coat. Mr. Robinson looked at Officer Kennedy's car "and immediately made an about-face and turned around and walked back behind the building." Rec. vol. II, at 6 (Tr. of May 10, 2008 Hr'g, Testimony of Officer Kennedy). Officer Kennedy got out his car, unholstered his gun, and followed Mr. Robinson around the building. There, Officer Kennedy saw Mr. Robinson walking with two women.

Officer Kennedy asked Mr. Robinson to stop and place his hands behind his back. Mr. Robinson complied, and Officer Kennedy then grabbed Mr. Robinson's hands, placed his gun back in his holster, and asked Mr. Robinson whether he had a gun. Mr. Robinson said he had a gun in his right pocket, and Officer Kennedy proceeded to handcuff Mr. Robinson. By that time, another Oklahoma City policeman, Officer Morrison, had arrived at the scene, and he removed the gun from Mr. Robinson's pocket. Officer Kennedy asked Mr. Robinson if he was a convicted felon, and Mr. Robinson said that he was. The officers then took Mr. Robinson into custody.

Mr. Robinson had three prior felony convictions. In March 2007, a federal grand jury returned an indictment charging him with one count of possessing a

firearm after a felony conviction, a violation of 18 U.S.C. § 922(g)(1). The

government filed a pretrial notice seeking an enhanced sentence under the Armed

Career Criminal Act, 18 U.S.C. § 924(e).

Prior to trial, Mr. Robinson filed a motion to suppress the gun that Officer

Kennedy discovered during the December 2006 detention. He argued that the

detention was not supported by the reasonable suspicion required by the Fourth

Amendment because it was based upon an anonymous tip that was not sufficiently

corroborated.

The district court denied Mr. Robinson's motion, concluding that there was

reasonable suspicion for the detention. The district court distinguished Florida v.

J.L., 529 U.S. 266 (2000), a case in which the Supreme Court held that an

anonymous tip that a person is carrying a gun, without more, does not establish

reasonable suspicion. The district court reasoned:

> Officer Kennedy was able to corroborate certain information beyond the
> physical similarity of the Defendant to the description of the suspect
> given by the tipster. First, the Defendant acted unnaturally when he
> noticed Officer Kennedy's arrival. Second, beyond the fact that a black
> man was outside 2628 North Kelly in a light-colored jacket, he was
> subsequently seen with two women, consistent with the allegations in
> the 911 call.

Rec. vol. I, doc. 32, at 4 (Order filed May 11, 2007).

The case proceeded to trial. Officer Kennedy testified about the

circumstances leading to Mr. Robinson's detention and the discovery of the gun.

Additionally, the prosecution offered the tape of the 911 call, which the district

-4-

court admitted over Mr. Robinson's objection. At the conclusion of the evidence, Mr. Robinson requested the judge to instruct the jury on the theory of defense of another. He maintained that his concern about the safety of others could excuse his possession of a firearm. The district court rejected Mr. Robinson's request, and the jury convicted him on the § 922(g)(1) charge.

The prosecution then sought an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). It relied on three prior convictions of Mr. Robinson: (1) a 2005 conviction for assault and battery with a dangerous weapon; (2) a 1989 conviction for burglary of a dwelling; and (3) a 1971 conviction for robbery with a firearm. Mr. Robinson argued to the district court that the use of the two older convictions to enhance his sentence violated his due process rights. The district court overruled that objection as well, and it sentenced Mr. Robinson to 180 months' imprisonment, the mandatory minimum, to be followed by three years' supervised release.

## II. DISCUSSION

In this appeal, Mr. Robinson challenges (A) the denial of his motion to suppress; (B) the introduction of the 911 call at trial; (C) the district court's refusal to instruct the jury on the defense of another; and (D) the district court's consideration of prior convictions in 1971 and 1989 to enhance his sentence. We consider each argument in turn.

## A. Reasonable Suspicion for the December 2006 Detention

Mr. Robinson first argues that Officer Kennedy lacked reasonable suspicion to detain him, and that, as a result, the gun in his pocket should have been suppressed as the fruit of the poisonous tree. In support of that argument, Mr. Robinson attacks the reliability of the anonymous caller, maintaining that other than the report that a man had a pistol, the caller's remaining statements were equivocal. Mr. Robinson further maintains that Officer Kennedy did not sufficiently corroborate the caller's information. He notes that the coat worn by Mr. Robinson turned out to be tan rather than white. Moreover, in his view, the fact that Officer Kennedy first saw Mr. Robinson alone and then saw him accompanying two women was inconsistent with the caller's report that he was threatening a lady and her daughter. Finally, Mr. Robinson seeks to discount the fact that he turned around when he first saw Officer Kennedy. In his view, it is not uncommon for innocent people not to want to become involved in someone else's trouble. Accordingly, his turning and walking away was "entirely natural under the circumstances." Aplt's Br. at 22.

In reviewing the district court's denial of a motion to suppress, we examine its factual findings for clear error and view the evidence in the light most favorable to the government. See United States v. Patterson, 472 F.3d 767, 775 (10th Cir. 2006). We review de novo the reasonableness of a search or seizure under the Fourth Amendment. United States v. Lyons, 510 F.3d 1225, 1234 (10th

-6-

Cir. 2007). The credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court. United States v. Kimoana, 383 F.3d 1215, 1220 (10th Cir. 2004).

Here, we agree with the parties that Officer Kennedy's initial encounter with Mr. Robinson (when he told him to stop and place his hands behind his back and then grabbed his hands and asked him whether he had a gun) constituted an investigative detention. Under the Fourth Amendment, such a detention is reasonable if it is (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Johnson, 364 F.3d 1185, 1189 (10th Cir. 2004) (internal quotation marks omitted).

In this case, the dispute involves the initial justification. A detention is justified at its inception if "specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime." United States v. Werking, 915 F.2d 1404, 1407 (10th Cir. 1990) (discussing Terry v. Ohio, 392 U.S. 1 (1968)). "[I]nchoate suspicions and unparticularized hunches" are not sufficient. Lyons, 510 F.3d at 1237 (internal quotation marks omitted). Nevertheless, "the level of suspicion required for reasonable suspicion is 'considerably less' than proof by a preponderance of the evidence or that required for probable cause." United States v. Lopez, 518 F.3d

-7-

790, 799 (10th Cir. 2008) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Like other courts, the Tenth Circuit has noted that "[a]nonymous tips raise difficult Fourth Amendment questions. In contrast to information obtained from a known informant, an anonymous tip rarely allows authorities to assess the informant's veracity, reliability, or basis of knowledge." United States v. Copening, 506 F.3d 1241, 1246 (10th Cir. 2007). Nevertheless, "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." J.L., 529 U.S. at 270 (internal quotation marks omitted). The inquiry is case-specific, but relevant factors include: (1) whether the informant lacked "true anonymity" (i.e., whether the police knew some details about the informant or had means to discover them); (2) whether the informant reported contemporaneous, first-hand knowledge; (3) the informant's stated motivation for reporting the information; and (4) whether the police were able to corroborate information provided by the informant. See United States v. Brown, 496 F.3d 1070, 1079 (10th Cir. 2007) (considering these factors and concluding that information from an anonymous informant was sufficiently reliable to establish reasonable suspicion).

In our view, several of the factors discussed in Brown support the district court's conclusion that reasonable suspicion existed. The 911 caller reported

contemporaneous, first-hand information and expressed concerned about a man threatening a woman and her daughter. See id. at 1077 ("[W]e consider it important that the caller's primary motive in contacting 911–as is apparent from listening to the tape of the 911 call–was not to implicate the armed man but to obtain aid and protection for his friend."). Additionally, before he detained Mr. Robinson, Officer Kennedy was able to corroborate some of the information provided by the caller. In particular, the caller reported that a black man in a white coat was threatening two women outside the Heritage Point Apartment Complex. Officer Kennedy initially saw a black man in what appeared to be a white coat. Upon following the man around the building, the officer saw the man walking with two women. See id. ("We also note that some relevant details provided by the caller were corroborated by the police.").

Moreover, when he first saw Officer Kennedy, Mr. Robinson turned around and walked away. In Illinois v. Wardlow, the Supreme Court concluded that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." 528 U.S. 119, 124 (2000). This includes "unprovoked flight upon noticing the police." Id. Applying that principle, the Court concluded that officers who were patrolling a high crime area had reasonable suspicion to detain a man who looked at them and ran away.

Although Mr. Robinson did not run away, as did the suspect in Wardlow, his about-face when he saw Officer Kennedy may be reasonably viewed as

"nervous, evasive behavior." <u>Wardlow</u>, 528 U.S. at 124.   That fact, along with the other circumstances we have noted, supports the district court's conclusion that Officer Kennedy had reasonable suspicion to detain Mr. Robinson. Therefore, the district court did not err in denying Mr. Robinson's motion to suppress.

## B.  Admission of the 911 Call

Next, Mr. Robinson argues that the district court violated his right to confront witnesses under the Sixth Amendment by admitting the tape of the 911 call that led Officer Kennedy to the Heritage Point apartment complex.  Mr. Robinson invokes the Supreme Court's decision in <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54 (2004), which holds that the Confrontation Clause bars admission of "testimonial" statements of a witness who does not appear at trial unless he or she is unavailable to testify, and the defendant had a prior opportunity for cross-examination.  <u>Crawford</u> discusses various definitions of the term "testimonial," but it does not offer a definitive formulation of that key term.  The Court did observe that "[s]tatements taken by police officers in the course of interrogations" are generally testimonial.  <u>Id.</u> at 52.

In <u>Davis v. Washington</u>, 547 U.S. 813 (2006), the Court offered a further explanation.  It stated that statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially

-10-

relevant to later criminal prosecution." Id.  In contrast, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id.  Here, the government invokes the latter statement and contends that the 911 call at issue sought police assistance regarding such an emergency.

Upon review of the record, we agree with the government that the statements in the 911 call were not testimonial.  They were made "to enable police assistance to meet an ongoing emergency," namely that a man with a gun outside the apartment who was threatening two women (according to the caller). See Davis, 547 U.S. at 822.  Accordingly, the admission of those statements did not violate the Confrontation Clause.

### C.  Refusal to Instruct on the Theory of Defense of Another

Mr. Robinson also argues that the district court erred in refusing to instruct the jury on the theory of defense of another.  His proposed instruction stated:

> The defendant Everett Robinson has offered evidence that he was acting in defense of another.
> A person is entitled to defend another person against the immediate use of unlawful force.  But the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.
> A person may use force which is intended or likely to cause death or great bodily harm only if he reasonably believes that force is necessary to prevent death or great bodily harm to another.
> To find the defendant guilty of the crime charged in the indictment, you must be convinced that the government has proved beyond a reasonable doubt:

-11-

> Either, the defendant did not act in defense of another,
> Or, it was not reasonable for the defendant to think that the force he used was necessary to defend another person against an immediate threat.

Rec. vol. I, doc. 34 (supplemental inst. no. 1) (emphasis in original).

In refusing to give this proposed instruction, the district court explained that "to allow this defense would basically totally emasculate the felon-in-possession statute, that a person just because of potential of some harm being out there you get to carry a weapon." Rec. vol. III, at 79. In the court's view, the evidence "[did not] rise[] to the limited circumstances in which such a defense, either self-protection or protection of another, could be . . . used . . . ." Id.

In challenging this ruling, Mr. Robinson invokes proffered testimony that he had received a call indicating that a man had been harassing his girlfriend's mother. In his view, "[g]iven the location and uncertainty of whether the aggressor was armed, the conclusion that obtaining a firearm was reasonable under the circumstances is supported by the proffered evidence." Aplt's Br. at 32.

"When the trial judge refuses to instruct on a specific defense, we review for an abuse of discretion." United States v. Butler, 485 F.3d 569, 572 (10th Cir. 2007). However, we must also review de novo the instructions as a whole to determine whether they accurately apprise the jury of the governing law. United States v. Williams, 403 F.3d 1188, 1195 n.7 (10th Cir. 2005).

The district court has substantial discretion in wording the instructions, as long as they adequately present the law and the issues. Id. If the district court erred by refusing to give a proposed instruction, "we must determine whether the conviction must be set aside because the error had a substantial influence on the outcome of the trial or leaves us in grave doubt as to its influence on the verdict. If the error is harmless the conviction will stand." United States v. Al-Rekabi, 454 F.3d 1113, 1119 (10th Cir. 2006) (internal quotation marks omitted).

Applying these standards, we conclude that the district court did not abuse its discretion in refusing to give the proffered instruction. Viewed as a whole, the instructions accurately informed the jury of the law governing the facts at issue.

In reaching this conclusion, we note that, in similar circumstances, this court has characterized the defense that Mr. Robinson attempted to assert as the necessity defense, "a narrow exception to stringent federal firearm laws." Al-Rekabi, 454 F.3d at 1122. That defense may excuse an otherwise unlawful act if the defendant shows that "(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm." Id. at 1121. The defense may be asserted "only by a defendant who was confronted with . . . a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts." Id.

-13-

Here, there is no indication that Mr. Robinson lacked a legal alternative to possessing the gun – for example, calling the police when he heard about the alleged harassment. The district court was correct: to allow the defense here would emasculate the federal felon-in-possession statute.

### D. Enhancement of Mr. Robinson's Sentence based upon Convictions from 1971 and 1989

Finally, Mr. Robinson argues that the district court violated his substantive due process rights by relying, in part, on convictions from 1971 and 1989 to enhance his sentence. He notes that the current offense is a status offense and that the firearm was not used or possessed in connection with another crime. Thus, he says, "it is not possible to conclude that Mr. Robinson is a dangerous and violent recidivist criminal who needs to be incarcerated for a minimum of fifteen years." Aplt's Br. at 38. In his view, that sentence shocks the conscience and thus violates the Due Process Clause. In support of this argument, he observes that certain provisions of the Sentencing Guidelines limit the age of prior convictions that can be used in calculating criminal history. See id. at 36 (citing USSG § 4A1.2(e)).

Mr. Robinson advanced this argument at sentencing, but the district court rejected it. It reasoned that "Mr. Robinson has a long history of [being] involved in the system . . . and I think under those circumstances [the reliance on the prior

convictions to enhance his sentence] certainly does not shock the conscience of this Court." Rec. vol. IV, at 4 (Tr. of Sept. 7, 2008 Sentencing Hr'g).

Mr. Robinson's argument is not supported by our precedent. He was sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Section 924(e)(1) provides, in part, that "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . ."

In United States v. Lujan, 9 F.3d 890, 893 (10th Cir. 1993), this court concluded that the Armed Career Criminal Act "does not place any time period restriction on prior convictions considered for sentence enhancement." We noted that "[o]ther circuits have uniformly rejected arguments that a limitation exists or should be created[,]" and we "similarly decline[d] to conclude that prior convictions should be eliminated from consideration under the [Armed Career Criminal Act] because they are ancient." Id. We therefore allowed the government to rely upon a burglary conviction that was more than twenty years old.

Lujan did not expressly undertake a substantive due process analysis, but there is no indication that such an analysis would undermine the government's reliance on Mr. Robinson's 1971 and 1989 convictions. As the government notes,

the Tenth Circuit has rejected a substantive due process challenge to a similar statute that allows sentencing enhancements based on prior convictions. See United States v. Bredy, 209 F.3d 1193, 1197 (10th Cir. 2000) ("We therefore hold that the Three Strikes statute's [18 U.S.C. § 3559(c)(1)(A)(i)'s] lack of time limitations on predicate convictions does not violate substantive due process."). Our review here is deferential to the judgment of the legislature: "Due process requires only that a sentencing scheme be rational." Id.; see also United States v. Preston, 910 F.3d 81, 89 (3d Cir. 1990) (concluding that § 924(e) "places no restriction on how recent prior convictions for violent felonies must be in order to be considered for enhancing a defendant's sentence under the Act, even though Congress obviously knew how to impose such a limitation," and that this construction of the statute "poses no constitutional problem in this respect" because "[n]either the Due Process Clause of the Fifth Amendment nor any other constitutional provision prohibits such a construction for sentencing purposes"). Here, it is rational, though undoubtedly harsh in some circumstances, for Congress to have concluded that those with three prior convictions, no matter how long ago those convictions occurred, should receive harsher sentences than other defendants without such criminal records.

We therefore conclude that the use of the 1971 and 1989 convictions to enhance Mr. Robinson's sentence did not violate his due process rights.

### III.  CONCLUSION

We therefore AFFIRM Mr. Robinson's conviction and sentence.


Entered for the Court,


Robert H. Henry
Chief Judge