**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

**Filed 2/4/97**

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,    )
    )
        Plaintiff-Appellee,    )
    )
v.    )    No. 95-6361
    )
BRENTON LEE CARNEY,    )
    )
        Defendant-Appellant.    )

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-95-56-R)**

Submitted on the briefs:

Patrick M. Ryan, United States Attorney, and Ted A. Richardson, Assistant U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Jack Dempsey Pointer, Oklahoma City, Oklahoma, for Defendant-Appellant.

Before **PORFILIO, HOLLOWAY** and **BRISCOE**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal and has therefore granted the parties' request to submit the cause without oral argument. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.

In this case, we consider whether juvenile convictions from Oklahoma courts were properly used in calculating a federal defendant's criminal history category under the United States Sentencing Guidelines. We conclude that they were in the instant circumstances and affirm the district court's judgment and sentence.

**I**

The facts summarized below are restated from the presentence report:

During the early morning hours of March 19, 1994, after drinking alcohol with others for several hours, defendant-appellant Brenton Lee Carney, an Indian, confronted and shot Randolph G. Brown, an Indian, to death with a .22 caliber rifle. The homicide occurred in White Eagle, Oklahoma, on Indian trust land belonging to the Ponca Tribe. The parties allude to simmering tensions between the families of Carney and Brown, and it appears that Brown's aunt had earlier that morning stabbed Carney in the side and elbow with a two-pronged fork. (Presentence Report at 3-4).

Carney was initially charged with manslaughter by a federal complaint. However, the United States subsequently obtained an indictment of him for second degree murder on Indian land in violation of 18 U.S.C. §§ 1111 and 1151. Carney eventually pled guilty on

2

July 7, 1995, to the lesser charge of manslaughter in a superseding information.

Under the Sentencing Guidelines, the base offense level for voluntary manslaughter is 25. See U.S.S.G. § 2A1.3. The Presentence Report (PSR) recommended a 2-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and an additional level (1) reduction under U.S.S.G. § 3E1.1(b), for an adjusted offense level of 22. With regard to Carney's criminal history, the PSR suggested assessment of eight (8) criminal history points for category IV. The eight points were based on the following factors:

1) a 1991 Oklahoma juvenile conviction for unauthorized use of a motor vehicle, burglary, and larceny of an automobile, for which Carney received probation -- 1 point under U.S.S.G. § 4A1.2(d)(2)(B);[1]

2) a 1992 Oklahoma juvenile conviction for attempted burglary, for which Carney received probation -- 1 point under § 4A1.2(d)(2)(B);

3) a 1992 Oklahoma juvenile conviction for entering with unlawful intent, for which Carney was placed in the custody of the Oklahoma Department of Human Services -- 2 points under U.S.S.G. § 4A1.2(d)(2)(A);[2]

4) a 1993 Oklahoma juvenile conviction for unauthorized use of a motor vehicle, for which Carney was placed in the custody of the Oklahoma Department of Human Services --

---

[1]"[A]dd **1** point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A)."

[2]"Add **2** points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense."

2 points under § 4A1.2(d)(2)(A);  and

5)  committing the instant offense less than two years after being released from the previous sentence -- 2 points under U.S.S.G. § 4A1.1(e).

Oklahoma law generally provides that records of juvenile delinquency are confidential and not to be disclosed.  10 O.S. Supp. 1995 § 7307-1.2(A)(1), (E).  At the sentencing hearing, Carney argued that the prior juvenile convictions should not be considered because they were sealed and therefore effectively expunged. The district court overruled the objection and adopted the PSR, sentencing Carney to the maximum sentence in the guideline range, 78 months.  The juvenile convictions raised Carney's criminal history category from I (0 points) to IV (8 points).  Based on his offense level of 22, the sentencing range for criminal history I is 41-51 months, while it is 63-78 months for criminal history IV.

Jurisdiction in the district court was proper under 18 U.S.C. §§ 1112(b), 1151, and Fed. R. Crim. P. 18, for this offense committed in Indian country.  The defendant was sentenced by the district judge to 78 months' imprisonment with the Bureau of Prisons and then to supervised release for a term of three years and a $50 special assessment, II R. 17, from which this timely appeal is taken.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

We review the district court's factual determinations under the clearly erroneous standard and its legal application of the sentencing guidelines de novo.  United States v. Janus Industries, 48 F.3d 1548, 1559-60 (10th Cir. 1995).

## II

Carney contends that the juvenile adjudications should not have been used in sentencing him because the Oklahoma statutes provided that such adjudications should not be treated as an arrest or conviction for any public or private purposes, citing 10 O.S. Supp. 1994 § 1125.4(A).[3] His first argument is that Oklahoma law has created a liberty interest and expectation that those adjudications would not be used for any such sentencing purpose.

We disagree. 10 O.S. Supp. 1995 §§ 7307-1.2(E) and 7307-1.7(F)(3) contain provisions that allow Oklahoma juvenile court records to be used by a federal court for adult sentencing purposes, even if the records have been sealed. Thus, § 4A1.2(d) of the Sentencing Guidelines, which requires federal district courts to consider a defendant's prior juvenile adjudications for sentencing purposes, is entirely consistent with Oklahoma law. Even if the two were not consistent, it is clear that Oklahoma law could not bar consideration of defendant's state juvenile court records "by a federal court in determining a sentence, when federal law provides otherwise." United States v. Daniels, 929 F.2d 128, 130 (4th Cir.)

---

[3]Carney relies on the Oklahoma statutes in effect on the date of his offense, March 19, 1995. As we have earlier in this opinion, we cite the statutes effective July 1, 1995, which were in effect on the date of Carney's sentencing, September 13, 1995. II R. 17; I R., Item 24. Generally the guidelines in effect at the date of sentencing apply, see 18 U.S.C. § 3553(a)(5), (a)(4), but the Ex Post Facto Clause prohibits the retroactive application of a changed guideline if the change disadvantages the defendant. See United States v. Roederer, 11 F.3d 973, 976 (10th Cir. 1993); United States v. Diamond, 969 F.2d 961, 967 n.10 (10th Cir. 1992). In this case the changes in the Oklahoma statutes do not violate the constitutional limitation and so we follow the general rule of applying statutes in effect at the time of Carney's sentencing, those effective July 1, 1995.

(citing supremacy clause, U. S. Constitution Art. VI, cl. 2), cert. denied, 502 U.S. 870 (1991).

For these reasons Carney has no basis for arguing that Oklahoma law prohibited the district court from considering his state juvenile adjudications during sentencing. Likewise defendant has no basis for arguing that Oklahoma law created a liberty interest that prevented Carney's juvenile adjudications from being used to enhance any subsequent adult sentence.[4]

### III

Carney's second argument is that use of the juvenile convictions violated his due process rights because they were not obtained in accordance with the procedures set forth in the Oklahoma statute.[5] Thus, he contends that there was never proof by a preponderance of lawfully admitted evidence that he had committed those juvenile crimes.

In United States v. Graves, 785 F.2d 870, 873 (10th Cir. 1986), and United States v. Jessup, 966 F.2d 1354, 1356-57 (10th Cir. 1992), cert. denied, 113 S. Ct. 1398 (1993), we held that evidence obtained by government agents in violation of state law would not be barred from use in sentencing unless its use would provide a substantial incentive for such

---

[4]This structure of the Oklahoma statutory scheme renders inapplicable United States v. Bagheri, 999 F.2d 80, 84 (4th Cir. 1993) (noting in dicta that a statutory scheme providing for expungement "arguably creates a liberty interest intended to extend to federal sentences").

[5]Under 10 O.S. Supp. 1995 § 7307-1.7(F)(3), a court is to issue an order unsealing the records for use in sentencing. The Federal Probation Officer testified at the sentencing hearing that she got the information about the Oklahoma juvenile convictions from the State Juvenile Probation Officer, and that she (the Federal Probation Officer) had some documents she was provided by the Department of Human Services about each time that Carney was adjudicated. Sentencing Transcript at 9. The government brief before us states that there is no indication that a court order was obtained for release of the records. Brief of Plaintiff-Appellee at 14.

6

violation.  We feel that it is clearly established that the consideration of the state juvenile records was not improper.

The record in this case is devoid of any indication that the probation officer obtained the juvenile records for such purpose of enhancing Carney's sentence, or that the use of Carney's state juvenile convictions provided an incentive for violation of the rules for the sealing of the records.  With respect to the Federal Probation Officer's actions here, we will follow the rule of the presumption of regularity which supports the official acts of public officers in the absence of clear evidence to the contrary.  United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926);  see Red Top Mercury Mines, Inc. v. United States, 887 F.2d 198, 202-03 (9th Cir. 1989);  United States v. Lott, 854 F.2d 244, 250 (7th Cir. 1988);  Nash v. Estelle, 597 F.2d 513, 518 (5th Cir. 1979) (en banc).

In this case the record is devoid of any evidence or indication that the probation officer did anything other than carry out her duty to develop the facts relevant to the defendant's criminal history accurately.  It is true that there was a clear written objection by Carney to paragraphs 30 through 33 of the PSR which set out the details from the Oklahoma court records about Carney's juvenile offenses and adjudications of delinquency, PSR at 6-7, 13, and at the sentencing hearing counsel for Carney vigorously made his legal objections and arguments against the use of the juvenile adjudications, which objections and arguments we have discussed and rejected earlier.  However, the sentencing transcript here reveals that no other question was raised below concerning the Federal Probation Officer's actions, nor

7

is there any indication that the use of Carney's juvenile convictions provided an incentive for violation of the rules for the sealing of the juvenile records. Moreover Carney neither disputes the factual accuracy of the information concerning the juvenile offenses and adjudications, nor has he attempted to show that the Oklahoma authorities would have withheld the information if it had been properly requested. Therefore we are persuaded that the district court did not err in considering Carney's Oklahoma juvenile convictions.

**AFFIRMED.**