**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENT CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff–Appellee, | No. 11-6339 |
| v. | |
| CORY DEVON WASHINGTON, | |
| Defendant–Appellant. | |

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:11–CR–00099–HE–1)**

Jeffrey Michael Byers, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant–Appellant.

Suzanne Mitchell, U.S. Attorney's Office (Sanford C. Coats, U.S. Attorney, Steven W. Creager, Special Assistant U.S. Attorney, and Ashley L. Altshuler, Assistant U.S. Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff–Appellee.

Before **HARTZ**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

**McKAY**, Circuit Judge.

Defendant Cory Washington pled guilty to two firearms charges. Before sentencing, the government filed a notice of prior convictions to support a sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The probation

office identified three predicate violent felonies: an adult conviction for assault and battery with a dangerous weapon, an adult conviction for second degree burglary, and an Oklahoma juvenile adjudication for pointing a weapon. Defendant objected to the application of the juvenile adjudication, but the district court ultimately concluded that the juvenile adjudication qualified as a violent felony under the ACCA. The court therefore applied the enhancement and sentenced Defendant to the minimum sentence under the Act, fifteen years' imprisonment. On appeal, Defendant objects only to the application of the juvenile adjudication to support the sentencing enhancement.

The ACCA enhancement applies when "a person who violates [18 U.S.C. §] 922(g) . . . has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

> As used in this subsection . . . the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

*Id.* § 924(e)(2)(B). "[T]he term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a violent felony." *Id.* § 924(e)(2)(C). Whether Defendant's juvenile adjudication qualifies as a violent felony conviction under the ACCA is a legal question that we review de novo. *See United States v. Zuniga*, 553

-2-

F.3d 1330, 1333 (10th Cir. 2009).

Defendant raises three objections to the application of this enhancement. First, he argues that the government did not establish his juvenile adjudication was for a felony, rather than a misdemeanor, violation of state law. Second, he contends Oklahoma juvenile adjudications generally do not qualify as convictions under the ACCA. Finally, he argues his juvenile adjudication was dismissed after he served his five-month term of probation, rendering the action a nullity under Oklahoma law and preventing its use as a predicate conviction under the ACCA. We consider each argument in turn.

We first consider Defendant's argument that the government failed to establish he committed an act of juvenile delinquency involving a violent felony rather than a misdemeanor. This argument arises from the fact that the charging document and associated documents from the juvenile adjudication did not include a statutory reference for Defendant's offense, and pointing a weapon can be either a misdemeanor or a felony under Oklahoma law.

As it stood at the time of Defendant's juvenile adjudication, the Oklahoma misdemeanor offense provided: "It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise." Okla. Stat. tit. 21, § 1279 (1992) (amended 1995). This offense was punishable by three to twelve months of imprisonment. *Id.* § 1280. The felony offense provided in part:

It shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons for the purpose of threatening or with the intention of discharging the firearm or with any malice or for any purpose of injuring, either through physical injury or mental or emotional intimidation . . . .

*Id.* § 1289.16. Violation of this statute was punishable by one to ten years of imprisonment. *Id.* § 1289.17.

Although the charging document for Defendant's adjudication does not include a statutory reference, it clearly tracks the language of the felony offense:

[T]he said minor is alleged to be delinquent in that: said Cory Devon Washington committed the act of POINTING A WEAPON, in Canadian County, State of Oklahoma, on or about the 14th day of April, 1992, to-wit: did willfully, and without lawful cause point a Colt M16 rifle, for the purpose of threatening and intimidating [a trooper], and with the unlawful, malicious intent then and there on the part of said Cory Devon Washington to injure the said Trooper . . . physically, or for the purpose of mental or emotional intimidation.

(R. Vol. 2 at 99.) Nevertheless, Defendant argues the juvenile adjudication was based on the misdemeanor offense because: (1) the charging document uses the term "pointing a weapon," which was closer to the 1992 title of the misdemeanor offense, "Pointing weapon at another," than the 1992 title for the felony, "Pointing firearms"; (2) Defendant's sentence of five months of probation was within the misdemeanor range of punishment; (3) court costs were not assessed at the standard level for juvenile felony adjudications; and (4) to the extent there is ambiguity, we should apply the rule of lenity to construe the juvenile adjudication to refer to the misdemeanor offense.

We are not persuaded the charging document must have been referring to the

-4-

misdemeanor offense simply because it used the word "weapon" rather than "firearm." Oklahoma courts are not consistent in their use of these terms and have specifically used the phrase "pointing a weapon" to refer to the felony offense. *See, e.g.*, *Thompson v. State*, 169 P.3d 1198, 1200 (Okla. Crim. App. 2007) (stating that the defendant was charged in "two counts of Feloniously Pointing a Weapon, under 21 O.S. 2001, § 1289.16"); *Wimberly v. State*, 698 P.2d 27, 30 (Okla. Crim. App. 1985) (noting the defendant was charged with three counts of "Pointing a Weapon" under Okla. Stat. tit. 21, § 1289.16, the felony statute); *Gatlin v. State*, 553 P.2d 204, 205 (Okla. Crim. App. 1976) (stating that the defendant was "convicted of the crime of Pointing a Weapon at Another in violation of 21 O.S. § 1289.16"). Thus, the charging document's description of Defendant's offense as "pointing a weapon" does not persuade us it must have been intended to refer to the misdemeanor offense even though the rest of the charging document would contradict such a conclusion.

Nor are we persuaded by Defendant's other arguments. The fact that Defendant was sentenced to five months of probation as a juvenile delinquent does not prove he would have been sentenced to a similar term of imprisonment had he been sentenced as an adult. A juvenile court need not follow statutory sentencing ranges in a juvenile adjudication. *See In re G.A.M.*, 563 P.2d 161, 162 (Okla. Crim. App. 1977) (affirming an order placing a juvenile in the custody of the Oklahoma Department of Institutions, Social and Rehabilitative Services for an indeterminate period of time, where an adult could only receive a thirty day sentence for the same violation). Indeed, "[t]he very purpose of the

-5-

juvenile system is to treat juveniles in a different manner from adults." *Id.* As for the court costs, while the amount assessed was lower than the flat charge for a juvenile felony, it was greater than the statutory cap for a juvenile misdemeanor, which supports the conclusion that Defendant's adjudication was not based on the misdemeanor offense—otherwise, the juvenile court would have exceeded its authority by ordering greater costs than authorized by statute. *See* Okla. Stat. tit. 28, § 162(A). Finally, we note that the rule of lenity is a rule of statutory construction inapplicable to ambiguous orders and judgments. *See United States v. Metzener*, 584 F.3d 928, 934-35 (10th Cir. 2009). Because the language of the charging document clearly tracks the language of the felony statute, and because this felony offense falls within the ACCA's definition of a violent felony, we conclude that Defendant's juvenile adjudication qualified as a predicate violent felony under the ACCA.

Defendant also argues Oklahoma law prevents the treatment of juvenile adjudications as criminal convictions under the ACCA or for other purposes. We rejected essentially the same argument in *United States v. Carney*, 106 F.3d 315, 317 (10th Cir. 1997). There, we explained the use of prior juvenile adjudications for sentencing purposes is "entirely consistent with Oklahoma law," and, even if there were an inconsistency, "it is clear that Oklahoma law could not bar consideration of defendant's state juvenile court records by a federal court in determining a sentence, when federal law provides otherwise." *Id.* (internal quotation marks omitted). Although Defendant cites to one additional Oklahoma statute that was not cited in *Carney*, this statute does not affect

our analysis. This statute simply provides that no juvenile adjudication "shall operate to impose any of the civil disabilities ordinarily resulting from conviction of a crime" and that "a child [shall not] be deemed a criminal by reason of a juvenile adjudication." Okla. Stat. tit. 10A, § 2-6-108(A). Neither the imposition of civil disabilities nor the deeming of a child as a criminal are at issue here. Moreover, we note Oklahoma law itself specifically permits prior juvenile adjudications to be used both for sentencing purposes, *id.* § 2-6-108(G)(3), and to determine the lawfulness of subsequent firearm possession, Okla. Stat. tit. 21, § 1283(D). "For these reasons [Defendant] has no basis for arguing that Oklahoma law prohibited the district court from considering his state juvenile adjudications during sentencing." *Carney*, 106 F.3d at 317.

Finally, Defendant contends his juvenile adjudication could not be used as a predicate conviction under the ACCA because it was dismissed by the juvenile court, rendering it a nullity. The record reflects that the charging document was filed in April 1992. In June 1992, the juvenile court ordered Defendant placed on probation and set a review hearing for November 19, 1992. On November 19, 1992, the district attorney "move[d] the Court to dismiss the . . . Juvenile Action for the reason to best meet the ends of justice" and "pray[ed] that all action in this case be terminated and dismissed." (R. Vol. 2 at 103.) The juvenile court approved the district attorney's application for dismissal and ordered the action to be dismissed without costs. Defendant argues this dismissal rendered the action a nullity, essentially setting it aside under state law such that it cannot be counted as a conviction under the ACCA. *See* 18 U.S.C. § 921(a)(20). For

-7-

support, Defendant relies on *Carder v. Court of Criminal Appeals*, 595 P.2d 416 (Okla. 1978). He also cites to the general principle that "dismissal of the action or proceeding, though a previous judgment may have been rendered therein, extinguishes judgment, action, and all, leaving the parties in the position they were in before it was commenced." *Sammons v. Pike*, 117 N.W. 244, 245 (Minn. 1908).

Under the ACCA, "[w]hat constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). Our review of Oklahoma law persuades us that "dismissal" is simply one way in which a juvenile court may terminate its jurisdiction over a juvenile action. *See* Okla. Stat. tit. 10A, § 2-2-503(A)(9) ("The court may dismiss the petition or otherwise terminate its jurisdiction at any time for good cause shown."). Oklahoma's statutory scheme treats dismissed cases the same as closed cases, and a dismissed case is only considered never to have occurred if the juvenile records are sealed. Under Oklahoma law, an individual's juvenile records may be sealed when "one (1) year has elapsed from the later of: (1) dismissal or closure of the case by the court, or (2) notice to the court . . . of final discharge of such person from the supervision of the Office of Juvenile Affairs or juvenile bureau," the individual has not been found guilty of a subsequent criminal offense, and "no juvenile or adult proceeding for a criminal offense is pending." Okla. Stat. tit. 10A, § 2-6-108(B)(1). And it is only "[u]pon the sealing of any record of any person alleged to be delinquent" that "the record and official actions subject to the order shall be deemed never to have occurred." *Id.* § 2-6-108(D).

Moreover, even such sealed records may still be used for sentencing purposes. *Id.* § 2-6-108(G)(3).

The fact that Oklahoma law permits the use of dismissed and sealed cases for sentencing purposes strongly suggests Oklahoma does not treat a dismissed juvenile adjudication as a nullity. Rather, Oklahoma appears to use "dismissal" simply as a way for a juvenile court to close a proceeding after appropriate actions have been taken, such as Defendant's completion of a five-month term of probation in this case. *See also United States v. Mason*, 435 F. App'x 726, 728 (10th Cir. 2011) (explaining that the probation office contacted an Oklahoma county district attorney's office and learned that "a dismissal in juvenile proceedings does not negate the delinquent adjudication, but instead closes the Court's interest in the juvenile case" (quoting PSR addendum)). In light of this specific use of the word "dismissal" in the Oklahoma scheme, general principles of law regarding this term's typical usage are inapplicable.

Defendant relies on the Oklahoma Supreme Court's statement in *Carder* that a juvenile court's dismissal order "vacated, set aside and entirely eliminated the action, rendering it a nullity." 595 P.2d at 422. At first glance, this statement appears to support Defendant's argument. However, viewing this statement in context, we are not persuaded that *Carder* was intended to alter the statutory scheme under which dismissed juvenile cases are treated essentially the same as other closed juvenile cases. In *Carder*, a juvenile was adjudicated delinquent and ordered into the temporary custody of the Department of Institutions, Social and Rehabilitative Services. The juvenile court subsequently

dismissed the case.  However, the Department contended the court was without jurisdiction to do so.  It was the Department's position that the juvenile court lost jurisdiction over the delinquent child as soon as the court ordered the child into the Department's custody.  In support of this position, the Department relied in part on a statute providing that "an order committing a child adjudicated to be delinquent to the Department[] may not be modified."  Okla. Stat. tit. 10, § 1118 (1969) (amended 1979, 1981, and 1995) (current version at Okla. Stat. tit. 10, § 7003-6.1).  The Oklahoma Supreme Court rejected this argument, holding: "It is clear that the order dismissing J-7-14 was not a 'modification.'  Modification is merely a revision or adjustment of details.  The dismissal order vacated, set aside and entirely eliminated the action, rendering it a nullity."  *Carder*, 595 P.2d at 422 (citation omitted).  Thus, the juvenile court had the authority to dismiss the juvenile action and, once it did so, "the Department, [the juvenile's] custodian only by reason of orders entered in that action, was without further claim of lawful custody."  *Id.*

Thus, *Carder*'s statement that the "dismissal order vacated, set aside and entirely eliminated the action" came in the context of distinguishing a dismissal from an unauthorized modification of a custody order:  because the dismissal order completely ended the action and terminated jurisdiction over the juvenile, the court held it was not the same as a modification of the disposition order.  *Carder* did not discuss the effect of a dismissal on the use of a juvenile adjudication in future proceedings, and we do not read it to affect the statutory scheme under which dismissed cases are treated the same as other

closed cases, only being deemed never to have occurred if the records are sealed under the statutory provisions.

Oklahoma's use of the term "dismiss" to refer to the termination of a juvenile court's jurisdiction over a proceeding is admittedly confusing. Perhaps Oklahoma does indeed intend for such a dismissal to render the juvenile adjudication a complete nullity ab initio, even for sentencing purposes. However, the statutory scheme as it presently stands does not so provide, and we will not reach such a result based simply on Oklahoma's use of the word "dismiss" and the Oklahoma Supreme Court's remarks in a different context. We hold that the dismissal of Defendant's juvenile adjudication following his five-month term of probation did not constitute expungement or setting aside of the conviction for ACCA purposes. We thus hold that the juvenile adjudication was appropriately applied as a predicate conviction under the ACCA.

Defendant's conviction and sentence are **AFFIRMED**.