FILED
United States Court of Appeals
Tenth Circuit

February 11, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENUTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PAUL EVERETT RICH, III,

    Defendant-Appellant.

No. 11-6342

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:11-CR-00098-F-1)**

---

William P. Earley, Assistant Federal Public Defender, Office of the Federal
Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Suzanne Mitchell, Assistant United States Attorney (Sanford C. Coats, United
States Attorney, and Ashley Altshuler, Assistant United States Attorney, with her
on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **BRISCOE**, Chief Judge, **HOLLOWAY** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

    Defendant Paul Everett Rich, III, pled guilty to one count of felon in

possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

Because he had been convicted of three predicate offenses, he qualified for enhanced punishment under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and was sentenced to the mandatory minimum of 180 months' imprisonment. Rich now appeals the imposition of the sentencing enhancement claiming: 1) his juvenile adjudication was "dismissed" by Oklahoma courts and should not be counted as a prior conviction under the ACCA; and 2) the ACCA violates substantive due process by considering these older, juvenile adjudications. We affirm.

**I**

In March 2011, Oklahoma City police officers took Rich into custody after security officers detained him for bringing a firearm into a local club. They found in Rich's possession one Bersa, Model 380 Thunder .380 caliber pistol and six rounds of .380 caliber ammunition. A federal grand jury subsequently indicted Rich for one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He pled guilty without a plea agreement on May 4, 2011.

Prior to sentencing, the government informed Rich it planned to seek an enhanced sentence under the ACCA. Under 18 U.S.C. § 924(e)(1), the government can invoke an enhanced sentence when a defendant has three previous convictions for violent felonies and/or serious drug crimes. The predicate convictions alleged against Rich included a juvenile adjudication for robbery with a dangerous weapon for conduct occurring on September 18, 1991.

2

Rich challenged the use of this juvenile adjudication for ACCA purposes. First, he argued that although he had been adjudicated a delinquent, a judge later entered an order dismissing the case. Rich contended that his juvenile adjudication no longer qualifies as a conviction for purposes of the ACCA. Second, he argued that the use of this twenty-year-old crime committed when he was 14 years old violated his constitutional right to substantive due process.

At a sentencing hearing on December 19, 2011, the district court rejected these arguments. The court said its reading of Oklahoma precedent suggested the dismissal of Rich's juvenile action merely meant the state court was terminating its jurisdiction, and not that the dismissal rendered the "previous adjudication in that juvenile case a nullity ab initio." ROA Vol. III at 20. Regarding the substantive due process claim, the court expressed sympathy with Rich's position, noting "there is something unsettling about visiting serious consequences on a defendant at the age this defendant is that are triggered by something he did when he was 14 years old." Id. at 19. But the court ultimately viewed itself "constrained" by the this circuit's precedent. Id. The court held the juvenile adjudication qualified as a predicate conviction under the ACCA and sentenced Rich to the fifteen-year mandatory minimum.

## II

The Armed Career Criminal Act provides enhanced sentences for a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) who has three prior

3

"violent felony" or "serious drug offense" convictions.  18 U.S.C. § 924(e)(1).

The ACCA defines "conviction" as "includ[ing] a finding that a person has

committed an act of juvenile delinquency involving a violent felony."  18 U.S.C.

§ 924(e)(2)(C).  In addition, the ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding
> one year, or any act of juvenile delinquency involving the use
> or carrying of a firearm, knife, or destructive device that would
> be punishable by imprisonment for such term if committed by
> an adult, that—
> > (i) has as an element the use, attempted use, or
> > threatened use of physical force against the person of
> > another; or
> > (ii) is burglary, arson, or extortion, involves use of
> > explosives, or otherwise involves conduct that presents a
> > serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  Under 18 U.S.C. § 921(a)(20), "what constitutes a

conviction of [any crime punishable by imprisonment for a term exceeding one

year] shall be determined in accordance with the law of the jurisdiction in which

the proceedings were held."

Rich asserts that his juvenile adjudication cannot qualify as a predicate

offense under the ACCA because a state court judge entered an order

"dismissing" his juvenile case, which he contends rendered "the 'finding'" that he

committed an act of juvenile delinquency a nullity.  Aplt. Br. at 8, 12.  We do not

agree.  While this case was pending on appeal, we rejected a similar argument

made by the defendant in United States v. Washington, No. 11-6339, ___ F.3d

___ (10th Cir. Dec. 28, 2012).  Addressing Oklahoma's use of the word "dismiss"

in its statutory scheme and caselaw, we were not persuaded that, in the absence of evidence to the contrary, the decision of an Oklahoma court to "dismiss" a juvenile case after adjudication meant anything more than the court was terminating its jurisdiction. Thus, we held "dismissal of Defendant's juvenile adjudication following his five-month term of probation did not constitute expungement or setting aside of the conviction for ACCA purposes." Id. at 11. Even if Washington were not binding on this panel, we find its reasoning persuasive. As Rich presents no convincing evidence that "dismissal" meant something different in his case, we must reject this argument.[1]

### III

Alternatively, Rich argues that the ACCA violates his Fifth Amendment rights. He contends the sentencing enhancement deprives him of substantive due process because it places no limits on the age of predicate convictions. Looking to old convictions, he says, lacks a rational basis with the purported goal in "removing currently dangerous felons from society." Aplt. Br. at 14-15. He notes that both the Federal Rules of Evidence and Sentencing Guidelines place limits on the use of old convictions. In addition, he cites to Supreme Court decisions that have incorporated into their analysis concerns about how the

---

[1] We note, however, that we find no merit in the government's argument that 18 U.S.C. § 924(e)(2)(C) somehow bars Rich from challenging whether his juvenile adjudication remained in force.

5

immaturity of minors can blind youths to the consequences of their actions and make proceedings involving juveniles unreliable.[2]

Under the Fifth Amendment, the due process clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." Substantive due process protects individuals from government conduct that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (citation and quotations omitted). As is pertinent to this case, "[d]ue process requires only that a sentencing scheme be rational." United States v. Bredy, 209 F.3d 1193, 1197

---

[2] As the Supreme Court said in Graham v. Florida, 130 S. Ct. 2011, 2032 (2010) (citations omitted):

> Another problem with a case-by-case approach is that it does not take account of special difficulties encountered by counsel in juvenile representation. As some amici note, the features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings. Juveniles mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it. They are less likely than adults to work effectively with their lawyers to aid in their defense. Difficulty in weighing long-term consequences; a corresponding impulsiveness; and reluctance to trust defense counsel seen as part of the adult world a rebellious youth rejects, all can lead to poor decisions by one charged with a juvenile offense. These factors are likely to impair the quality of a juvenile defendant's representation. A categorical rule avoids the risk that, as a result of these difficulties, a court or jury will erroneously conclude that a particular juvenile is sufficiently culpable to deserve life without parole for a nonhomicide.

6

(10th Cir. 2000).[3]

Although we might not permit the use of stale convictions if we were writing the law—or we might at least limit the age of convictions considered—we cannot say Congress's decision to allow the use of these older convictions shocks the conscience. We have long held the ACCA "itself does not place any time period restriction on prior convictions considered for sentence enhancement," noting "[o]ther circuits have uniformly rejected arguments that a limitation exists or should be created." United States v. Lujan, 9 F.3d 890, 893 (10th Cir. 1993). Although we have not addressed a substantive due process challenge to this feature of the ACCA in any published opinion, we have rejected it in an unpublished opinion, see United States v. Robinson, 304 Fed. App'x. 746, 753-54 (10th Cir. 2008), as have other circuits in published opinions. See, e.g., United States v. Preston, 910 F.2d 81, 89 (3d Cir. 1990) ("Our construction of § 924(e) [as placing no limit on age of convictions] poses no constitutional problem in this respect. Neither the Due Process Clause of the Fifth Amendment nor any other

---

[3] Rich suggests in his brief that the legislation needs to be "narrowly drawn." Aplt. Br. at 21. It is not clear why this would be. Narrow tailoring is typically only associated with heightened levels of scrutiny. Erwin Chemerinsky, Constitutional Law 539-543 (3d ed. 2006). Rich cites for support only a First Amendment case, Sable Communications of Calif., Inc. v. FCC, 492 U.S. 115 (1989), where the government banned "indecent as well as obscene interstate commercial telephone communications." Id. at 117. Content-based speech restrictions are "presumptively invalid and subject to strict scrutiny." Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 358 (2009) (quotation omitted). Rich does not explain why Sable would be relevant here.

constitutional provision prohibits such a construction for sentencing purposes."). While these cases are not binding precedent, the opinions of these jurists that the law does not violate the constitution counsels against our concluding that the law is irrational or shocks the conscience. Further, we have rejected a similar challenge regarding the federal "three strikes" statute, which, like the ACCA, permits the government to rely on older convictions. Bredy, 209 F.3d at 1197-98 (using eighteen-year-old and twenty-seven-year-old armed bank robbery convictions as predicates did not violate substantive due process). And we did so even though the statute imposes harsher penalties than the ACCA, requiring a sentence of life in prison, as opposed to a mandatory minimum of fifteen years. 18 U.S.C. § 3559(c).

The arguments Rich advances do not bring our rejection of his substantive due process challenge into question. The fact that the Federal Rules of Evidence and Sentencing Guidelines choose to treat older convictions differently than more recent ones does not make it irrational for Congress to have a different view when it comes to the sentencing of repeat offenders who use firearms. The same goes for a district court judge who chooses to exercise his discretion in granting a young offender leniency. These more sympathetic approaches might fit some criminal justice contexts, but we conclude Congress did not violate the Fifth Amendment by taking a different approach when drafting this portion of its

federal gun laws.[4]

Finally, we are unpersuaded that we should alter this approach when considering the more narrow question of whether using older juvenile adjudications as predicate convictions violates substantive due process. First, the Supreme Court typically has expressed its concerns about the unformed minds of juveniles when addressing Eighth Amendment challenges raised by juvenile defendants to death penalty sentences and sentences for life without parole. These extraordinary sentences "share some characteristics . . . that are shared by no other sentences." Graham v. Florida, 130 S. Ct. 2011, 2027 (2010). Life without parole "deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence." Id. And sentencing someone to death is, obviously, even more severe. Woodson v. North Carolina, 428 U.S. 280, 305 (1976) ("Death, in its finality, differs more from life

---

[4] This does not necessarily mean that the use of certain juvenile adjudications as predicate convictions could not raise constitutional concerns. The Ninth Circuit, for instance, has held that a district court violated Apprendi v. New Jersey, 530 U.S. 466 (2000), when it considered a nonjury juvenile adjudication a predicate offense under the ACCA. United States v. Tighe, 266 F.3d 1187, 1195 (9th Cir. 2001). But "[t]he majority of circuits that have examined the question of whether the absence of a jury trial prevents the use of a juvenile adjudication to enhance a sentence under the ACCA have concluded that there is no such barrier." Welch v. United States, 604 F.3d 408, 426 (7th Cir. 2010). We have no need to address the issue here. Rich received a jury trial and does not challenge this part of the use of his predicate juvenile adjudication as constitutionally deficient.

9

imprisonment than a 100-year prison term differs from one of only a year or two."). True, the Court also mentioned immaturity in a sentencing case, Gall v. United States, 552 U.S. 38, 58 (2007), but that was only in affirming a district court's exercise of discretion, not in imposing a constitutional mandate. Id. ("Given the dramatic contrast between Gall's behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future.").

Second, all of these cases involve sentences imposed directly for crimes committed while the defendants were young. In the case before us, an adult defendant faced an enhanced sentence for a crime he committed as an adult. While it may be troubling that a district judge is forced to impose such a stiff mandatory penalty based in part on a juvenile adjudication that was entered twenty years prior to the sentencing at issue, we cannot conclude that this "shocks the conscience." We must bear in mind the impetus for the passage of the ACCA: punishing, and hopefully deterring, the recidivist criminal who commits violent felonies.[5]

---

[5] As the Supreme Court has said:

> As suggested by its title, the Armed Career Criminal Act
>
> (continued...)

10

Further, although not argued by the government, we note the fact that the twenty years that have passed since Rich's juvenile adjudication actually cuts against him because within that length of time Rich had the opportunity to reform. The juvenile adjudication here triggered the enhanced sentence only after Rich received two more predicate convictions as an adult <u>and</u> committed the most recent felon-in-possession violation.  Regardless of the inability of minors to fully understand the consequences of their actions, adults facing enhanced sentences based, only in part, on acts committed as juveniles have had the opportunity to better understand those consequences but have chosen instead to continue to offend.[6]  Therefore, we also reject Rich's substantive due process claim.

**IV**

We AFFIRM the sentence imposed by the district court.

---

[5](...continued)
> focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun.  In order to determine which offenders fall into this category, the Act looks to past crimes.  This is because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun.

<u>Begay v. United States</u>, 553 U.S. 137, 146 (2008) (citations omitted).

[6]  We note, however, that not all sentences based on past convictions are necessarily constitutional.  <u>See, e.g.</u>, <u>Solem v. Helm</u>, 463 U.S. 277, 280-81, 284 (1983) (sentence of life imprisonment without parole for defendant's seventh nonviolent felony, passing a worthless check, violated the Eighth Amendment).

11