IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONTA E. VICKERS, | § | |
| | § | No. 448, 2014 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for Sussex County |
| STATE OF DELAWARE, | § | Cr. ID # 1308012233A |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: June 10, 2015
Decided: June 11, 2015

Before **STRINE**, Chief Justice, **VAUGHN** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Scott D. Goodwin, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**SEITZ**, Justice:

The appellant, Donta E. Vickers, filed this appeal from the Superior Court's sentence, declaring Vickers a habitual offender under the Delaware Criminal Code.[1] Vickers argues that the Superior Court erred as a matter of law in sentencing him to life in prison as a habitual offender because the first of his three predicate felony convictions occurred when he was a juvenile. We find no merit in the appeal and therefore affirm.

## I.    FACTS AND PROCEDURAL HISTORY

The victim of the crimes (the "robbery victim") rented a room in a house on Kimmey Street in Georgetown, Delaware.[2] Around 10:30 p.m. on August 15, 2013, the robbery victim received a telephone call from Lenetta Long, who the robbery victim knew to be a prostitute using the name "Black Nada."[3] He invited her over, and sometime after midnight, after locking the front door of the house and his room door, the two had sex in the bedroom, but were interrupted when Long answered a call on her cell phone.[4] The robbery victim spoke limited English and did not understand what was said during the call.[5] After the call Long got up, said she had to use the bathroom, and left the bedroom.[6] When she returned, the robbery victim locked the bedroom door and they resumed having sex.

---

[1] 11 *Del. C.* § 4214(b).
[2] A-16.
[3] A-17-19, 38, 74.
[4] A-19-20.
[5] A-20-21.
[6] A-21.

A few minutes later, someone broke down the bedroom door and Vickers entered the bedroom and pointed a gun at the robbery victim, demanding money.[7] Vickers had covered his face and head with a black cloth, but Vickers' face could still be seen by the robbery victim in the bedroom light. As the robbery victim testified, he could see "his face and his lips and everything."[8]

Vickers also had distinctively large eyes, so the robbery victim recognized him right away as a former co-worker and Georgetown resident.[9] The robbery victim saw a second man hiding outside the bedroom, but did not see the man's face.[10] He identified both men as "black American" and dressed in black.[11] The robbery victim described Vickers as "five-ten and skinny" and the other man as "big and strong."[12]

The robbery victim told Vickers there was money in his pants, and begged Vickers not to shoot him.[13] Vickers put the gun to the robbery victim's head, took his pants and then looked at Long, who gestured towards a piggy bank.[14] Vickers then shot the robbery victim in the right leg, just above the knee, took the pants and piggy bank, and left the house with Long.[15] The robbery victim had about $500 in

---

[7] A-22-23.
[8] A-26-27, 67.
[9] A-27, 67.
[10] A-25-26.
[11] *Id.*
[12] *Id.*
[13] A-23.
[14] A-24-25.
[15] A-29, 31; B-1.

his pants and about $60 in the piggy bank.[16] He wrapped his leg with a towel to staunch the bleeding, left the house, and saw three people running towards the Perdue plant on Savannah Drive, where the robbery victim knew Vickers lived in a house owned by Long's mother.[17] Long lived in the same house.

The robbery victim called 911 and the police arrived. He told the police that he knew the shooter and where he lived.[18] The police drove him to the house on Savannah Drive where the robbery victim identified Vickers as the shooter.[19] The police took Vickers into custody and recorded a statement from Vickers where he conceded that he likely had gunshot residue on his hands;[20] he was at the crime scene; he held the gun that shot the robbery victim;[21] but according to his story, the actual shooter handed the gun to Vickers after the shooting so Vickers could feel how hot the gun was.[22] The robbery victim suffered a permanent injury as a result of the gunshot wound to his leg.[23]

Following grand jury indictments and a mistrial granted to allow Vickers to explore potentially exculpatory evidence that came to light during a first trial, on

---

[16] A-25, 31.
[17] A-28-31, 74-75.
[18] A-31, 32.
[19] A-32-33. The robbery victim identified Vickers as "the one with the big eyes." *Id.* The police also executed a search warrant on the house and found two dark-colored "doo-rags" near the bed in Vickers' room. A-77-78. A police dog trained to track the freshest scent tracked a scent from the robbery victim's house to the junkyard across the street from the Savannah Drive house, but the search was halted short of the house for safety reasons. A-73, 84; B-2-6.
[20] State's Trial Exhibit 15 at 4:16:51.
[21] *Id.* at 4:14:40.
[22] *Id.* at 4:47:35.
[23] A-33-35.

4

June 10, 2014, after a two day trial, a Sussex County jury found Vickers guilty of assault second degree as a lesser-included offense of assault first degree;[24] attempted robbery first degree;[25] home invasion;[26] conspiracy second degree;[27] and three counts of possession of a firearm during the commission of a felony.[28]

On August 8, 2014, the State filed a motion to sentence Vickers as a habitual offender under 11 *Del. C.* § 4214(b). The Superior Court granted the motion and sentenced Vickers to the following: attempted robbery first degree – life imprisonment at Level 5 with credit for 359 days previously served; home invasion – life imprisonment at Level V; assault second degree – 10 years at Level V with credit for 359 days previously served; and conspiracy second degree – 2 years at Level V; and three counts of possession of a firearm during the commission of a felony – life imprisonment at Level 5.[29]

Vickers does not dispute that he has been convicted of three violent felonies on three separate occasions – Arson First Degree in 1995;[30] Robbery First Degree in 1998;[31] and five of the felony convictions in the case now before us. Vickers also concedes that he was charged, convicted, and sentenced as an adult in

---

[24] 11 *Del. C.* §§ 612; 613.
[25] *Id.* at §§ 531 and 832.
[26] *Id.* at § 826A.
[27] *Id.* at § 512.
[28] *Id.* at § 1447A.
[29] A-150-51.
[30] A-114-15.
[31] A-110-112.

Superior Court for the arson offense.[32]  Nor does he dispute that, at least as to all of the convictions, the requirements of the habitual offender statute, 11 *Del. C.* § 4214(b),[33] have been met by these offenses.

Instead, Vickers argues on appeal that his conviction for the first of the three violent felony offenses, arson first degree, should not be counted under the habitual offender statute because he was a juvenile at the time of the offense and conviction.[34]  According to Vickers, the Supreme Court of the United States has recognized on several occasions in the last ten years that juveniles have diminished responsibility, and mandatory sentencing schemes violate due process when the age of the offender at the time of the commission of the crime cannot be considered at the time of sentencing.  Following the "tenets" of these cases, Vickers argues that his right to due process has been violated by counting the first conviction, which occurred while he was a juvenile.

---

[32] A-123.

[33] "Any person who has been 2 times convicted of a felony or an attempt to commit a felony hereinafter specifically named, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony hereinafter specifically named, or an attempt to commit such specific felony, is declared to be an habitual criminal, and the court in which such third or subsequent conviction is had, in imposing sentence, shall impose a life sentence upon the person so convicted unless the subsequent felony conviction requires or allows and results in the imposition of capital punishment. Such sentence shall not be subject to the probation or parole provisions of Chapter 43 of this title."  The statute goes on to list the felonies that qualify as felonies subject to 11 *Del. C.* § 4214(b).  All of the felonies listed above qualify as felonies under the statute.

[34] Vickers was born June 6, 1977.  A-123.  The incident leading to his conviction for Arson First Degree occurred on August 29, 1994.  A-105.  A jury convicted him of the arson offense on January 10, 1995, and the Superior Court sentenced him on February 17, 1995.  *Id.*  A juvenile, or child, is a person who has not reached his or her eighteenth birthday.  10 *Del C.* § 901(4).

The State responds that this Court has held that a juvenile's prior felony convictions are admissible as proof of habitual offender status in adult criminal proceedings. Unlike the federal cases cited by Vickers, the State argues that Vickers was sentenced to life in prison as an adult. A due process violation is possible, the State contends, only where juveniles are being sentenced for juvenile offenses.

We review the Superior Court's determination of law and the constitutional questions raised on appeal *de novo*.[35]

## II.    ANALYSIS

The narrow issue before the Court is whether Vickers' first violent felony offense and conviction, both of which occurred when he was a juvenile, can be counted towards the three violent felony convictions necessary to sentence him as a habitual criminal under 11 *Del. C.* § 4214(b). As the State points out, we have travelled this road before, and have found that a juvenile's prior felony convictions for offenses occurring while a juvenile are admissible as proof of habitual offender status.[36]

Vickers only new argument relies on more recent United States Supreme Court cases that require that juvenile offenses be treated differently under the Eight

---

[35] *State v. Guthman*, 619 A.2d 1175, 1177 (Del. 1993); *Grace v. State*, 658 A.2d 1011, 1015 (Del. 1995).
[36] *Summers v. State*, 760 A.2d 163 (Del. 2000) (Table); *Stone v. State*, 1994 WL 276984 at *2 (Del. June 14, 1994) (citing *Fletcher v. State*, 409 A.2d 1254 (Del. 1979).

and Fourteenth Amendment to the United States Constitution. But none of these cases is helpful to Vickers in the context of habitual offender sentences.

In *Roper v. Simmons*, the United States Supreme Court held that the Eighth and Fourteenth Amendments barred execution of persons under age 18 at the time of the capital offenses.[37] The Court found that a child's character is not as well formed as an adult's, and thus, his actions less likely to be evidence of irretrievable depravity.[38] In *Graham v. Florida*, the Supreme Court prohibited life without parole sentences on juvenile offenders who did not commit homicide.[39] Once again the Court relied on the lessened culpability juveniles have and are therefore less deserving of the most serious forms of punishment, including life in prison.[40] And in *Miller v. Alabama*, the Court determined that mandatory life without parole for juvenile offenders violated the Eighth Amendment.[41]

In each of these Supreme Court cases, the Court imposed severe sentences on juvenile offenders for crimes committed as juveniles. Here, Vickers was sentenced as an adult for crimes committed as an adult much later in life. The sentencing leniency required by the Supreme Court for criminal conduct in a juvenile's formative years has no application to an adult being sentenced as an adult.

---

[37] 543 U.S. 551, 578 (2005).
[38] *Id*. at 570.
[39] 560 U.S. 48, 82 (2010).
[40] *Id*. at 50.
[41] 132 S. Ct. 2455, 2460 (2012).

8

When faced with similar arguments under these Supreme Court cases, the federal courts have found that juvenile offenses can be used to determine the criminal history of adults.[42]  In essence, courts consider it an enhanced punishment for the current offense, not an additional punishment for the earlier juvenile offense.  As the Tenth Circuit has explained, "[u]nlike defendants who receive severe penalties for juvenile offenses and are thus denied 'a chance to demonstrate growth and maturity,'… recidivists have been given an opportunity to demonstrate rehabilitation, but have elected to continue a course of illegal conduct."[43]

Vickers committed the most recent felonies at the age of 36.  Before his last conviction, he had the chance to rehabilitate himself.  Having failed to do so, the Superior Court correctly considered Vickers' prior youthful offenses under the habitual criminal statute as he continued his illegal activity into adulthood.[44]

---

[42] *United States. v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013); *United States v. Hunter*, 735 F.3d 172, 173 (4th Cir. 2013); *United States v. Edwards*, 734 F.3d 850, 852-53 (9th Cir. 2013).

[43] *United States v. Orona*, 724 F.3d 1297, 1308 (10th Cir. 2013) (quoting *Graham*, 560 U.S. at 73); *see also United States. v. Rich*, 708 F.3d 1135, 1141 (10th Cir. 2013) ("Regardless of the inability of minors to fully understand the consequences of their actions, adults facing enhanced sentences based, only in part, on acts committed as juveniles have had the opportunity to better understand those consequences but have chosen instead to continue to offend."); *United States v. Banks*, 679 F.3d 505, 508 (6th Cir. 2012) (distinguishing *Graham* in relation to a 33-year-old offender who "remained fully culpable as an adult for his violation and fully capable of appreciating that his earlier criminal history could enhance his punishment"); *United States v. Scott*, 610 F.3d 1009, 1018 (8th Cir. 2010) (reasoning that the defendant was 25-years old at the time he committed his instant offense and *Graham* "did not call into question the constitutionality of using prior convictions, juvenile or otherwise, to enhance the sentence of a convicted adult").

[44] *See Hoffman*, 710 F.3d at 1232; *see also Edwards*, 734 F.3d at 852-53 ("We reject [defendant]'s contention and hold that these recent Eighth Amendment cases [*Roper*, *Graham*, and *Miller*] do not prevent the district court from assigning criminal history points for juvenile convictions.  In so holding, we, join the unanimous view of our sister circuits, which have affirmed the use of juvenile convictions to determine criminal history of adults.") (citing *United*

9

## III.   CONCLUSION

The Superior Court did not err as a matter of law when it sentenced Vickers as a habitual offender under 11 *Del. C.* § 4214(b).  The judgment of the Superior Court is AFFIRMED.

---

*States v. Graham*, 622 F.3d 445, 461-64 (6th Cir. 2010); *United States v. Scott*, 610 F.3d 1009, 1018 (8th Cir. 2010); *United States v. Mays*, 466 F.3d 335, 339-40 (5th Cir. 2006); *United States v. Salahuddin*, 509 F.3d 858, 863-64 (7th Cir. 2007); *United States v. Wilks*, 464 F.3d 1240, 1242-43 (11th Cir. 2006)).